20-CV-8509 (PAE)(KNF)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT GIALLANZO,

Plaintiff,

-against-

CITY OF NEW YORK,

Defendant.

**MEMORANDUM OF LAW IN
SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT**

***GEORGIA M. PESTANA***
*Corporation Counsel of the City of New
York*

*Attorney for Defendant*
*100 Church Street, Rm. 2-178*
*New York, New York 10007*

*Of Counsel:  Kami Z. Barker*
*Tel:  (646) 960-1103*

*Matter No.:  2020-044780*

**TABLE OF CONTENTS**

<u>Page</u>

TABLE OF AUTHORITIES...............................................................................................iii

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS................................................................................................3

ARGUMENT

      POINT I

            PLAINTIFF FAILS TO STATE A CLAIM FOR
            UNPAID COMPENSATORY TIME UNDER THE
            FLSA ..............................................................................................4

            A.  Plaintiff Has Fallen Under the Executive
                Exemption of the FLSA Since 2005 and Is Not
                Entitled to Payment for Unused Compensatory
                Time Accrued During that Time ...........................................4

                  1.  Plaintiff Was Paid on a "Salary Basis".........................5

            B.  PLAINTIFF'S HOURLY OVERTIME AND
                NIGHT SHIFT DIFFERENTIAL RATES DO
                NOT FAIL THE SALARY BASIS TEST ..........................................7

            C.  PLAINTIFF'S SALARY WAS NOT SUBJECT
                TO IMPROPER DEDUCTIONS .........................................9

             D.  PLAINTIFF'S   ADDITIONAL   INCOME
                DOES NOT VIOLATE THE SALARY BASIS
                TEST BASED ON 29 C.F.R. § 541.604 ...........................13

                  1.  Since 2005, Plaintiff's Primary Duty Has
                     Been Management ...................................................16

                  2.  Plaintiff Customarily and Regularly
                     Directed the Work of Two or More
                     Employees ...............................................................19

                  3.  Plaintiff Makes Suggestions and
                     Recommendations Regarding the Status of
                   Dot Employees that Are Given Particular
                   Weight .....................................................................19

**Page**

    E.   All but 59 Hours and 30 Minutes of Plaintiff's Compensatory Time was Earned as an Exempt Employee..............................................................................23

    F.   Liquidated Damages Are Not Recoverable Because Defendant Acted in "Good Faith"........................................24

        1.   Defendant Demonstrated Subjective Good Faith as a Matter Of Law.............................................................24

        2.   Defendant's Conduct Was Objectively Reasonable...............................................................................25

CONCLUSION .........................................................................................................26

# TABLE OF AUTHORITIES

**Cases**                                                                                                         **Pages**

*Aaron v. City of Wichita*,
   54 F.3d 652 (10th Cir. 1995) ...................................................................................... 11

*Acs v. Detroit Edison Co.*,
   444 F.3d 763 (6th Cir. 2006) ...................................................................................... 15

*Adams v. Niagara Mohawk Power Corp.*,
   No. 02-CV-1353, 2008 U.S. Dist. LEXIS 76375
   (N.D.N.Y. Sept. 30, 2008) .......................................................................................... 8

*Affrunti v. Long Island Univ.*,
   No. 04-2710-cv, 2005 U.S. App. LEXIS 12372
   (2d Cir. June 22, 2005) ............................................................................................... 3

*Ahern v. County of Nassau*,
   118 F.3d 118 (2d Cir. 1997) ................................................................................. 10, 11

*Amash v. Home Depot U.S.A., Inc.*,
   2014 U.S. Dist. LEXIS 133214 (N.D.N.Y Sept. 23, 2014) ................................... 20-21

*Anani v. CVS RX Servs.*,
   2011 U.S. Dist. LEXIS 57625 (E.D.N.Y. 2011) ................................ 7, 8, 9, 13, 14, 15, 16, 18

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ................................................................................................ 3, 4

*Auer v. Robbins*,
   519 U.S. 452 (1997) .................................................................................................. 10

*Barfield v. New York City Heath & Hospitals Corp.*,
   537 F.3d 132 (2d Cir. 2008) ................................................................................. 24, 25

*Barner v. City of Novato*,
   17 F.3d 1256 (9th Cir. 1994) ................................................................................ 11, 12

*Bell v. Callaway Partners, LLC*,
   No. 06-CV-1993,
   2010 U.S. Dist. LEXIS 36564 (N.D. Ga. Feb. 5, 2010) ............................................ 9

*BellSouth Telecomms., Inc., v. W.R. Grace & Co.*,
   77 F. 3d 603 (2d Cir. 1996) ....................................................................................... 3

*Bongat v. Fairview Nursing Care Center, Inc.*,
   341 F. Supp. 2d 181 (E.D.N.Y. 2004) ....................................................................... 9

**Cases**                                                                       **Pages**

*Brock v. Superior Care Inc.*,
   840 F.2d 1054 (2d Cir. 1988) ............................................................ 24

*Caperci v. Rite Aid Corp.*,
   43 F. Supp. 2d 83 (D. Mass. 1999) ..................................................... 15

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ............................................................................. 3

Cowart v. Ingalls Shipbuilding, Inc.,
   213 F.3d 261 (5th Cir. 2000) ............................................................. 10

*Cross v. Arkansas Forestry Comm'n*,
   938 F.2d 912 (8th Cir. 1991) ............................................................. 25

*Dawson v. County of Westchester*,
   373 F.3d 265 (2d Cir. 2004) ................................................................ 4

*Dister v. Cont'l Group, Inc.*,
   859 F.2d 1108 (2d Cir. 1988) .............................................................. 3

*Fife v. Harmon*,
   171 F.3d 1173 (8th Cir. 1999) ........................................................... 15

*Forbes v. Lighthouse Int'l*,
   No. 11 Civ. 7065, 2013 U.S. Dist. LEXIS 62454
   (S.D.N.Y. May 1, 2013) ................................................................... 3, 4

*Guinup v. Petr-All Petroleum Consulting Corp.*,
   2010 U.S. Dist. LEXIS 86280 (N.D.N.Y Aug. 23, 2010) .............. 18, 19

*Havey v. Homebound Mortg., Inc.*,
   547 F.3d 158 (2d Cir. 2008) ................................................................ 5

*Herman v. RSR Sec. Servs. Ltd.*,
   172 F.3d 132 (2d Cir. 1999) .............................................................. 24

*Holladay v. Burch, Oxner, Seale Co., CPA's, PA*,
   No. 07-CV-3804, 2009 U.S. Dist. LEXIS 17831
   (D. S.C. March 6, 2009) ............................................................... 13, 15

*Inclan v. New York Hospitality Grp., Inc.*,
   95 F. Supp. 3d 490 (S.D.N.Y. 2015) ................................................. 25

**Cases**                                                                                     **Pages**

*International Ass'n of Fire Fighters, Alexandria Local 2141 v. City of Alexandria, Va.*,
720 F. Supp. 1230 (E.D. Va. 1989),
*aff'd without opinion*, 912 F.2d 463 (4th Cir. 1990)................................................................11

*Jones v. VA. Oil Co.*,
69 F. App'x 633 (4th Cir. July 23, 2003)...............................................................................18

*Kelly v. City of Mount Vernon*,
162 F.3d 765 (2d Cir. 1998).................................................................................................10

*Kennedy v. Commonwealth Edison Co.*,
252 F. Supp. 2d 737 (C.D. Ill. 2003)...................................................................................15

*McClanahan v. Mathews*,
440 F.2d 320 (6th Cir. 1971)...............................................................................................24

*McGuire v. City of Portland*,
159 F. 3d 460 (9th Cir. 1998)................................................................................................8

*Monroe Firefighters Ass'n v. City of Monroe*,
600 F. Supp. 2d 790 (W.D. La. 2009)................................................................................22

*Mota v. Imperial Parking Sys.*,
2010 U.S. Dist. LEXIS 87593 (S.D.N.Y. Aug. 24, 2010)...................................................23

*Murphy v. Town of Natick*,
516 F. Supp. 2d 153 (D. Mass. 2007)..................................................................................22

*Paganas v. Total Maint. Solution, LLC*,
2016 U.S. Dist. LEXIS 167580 (E.D.N.Y. Dec. 5, 2016)...................................................23

*Palazzolo-Robinson v. Sharis Mgmt. Corp.*,
68 F. Supp. 2d 1186 (W.D. Wash. 1999).............................................................................8

*Ramos v. Baldor Specialty Foods, Inc.*,
687 F.3d 554 (2d Cir. 2012).................................................................................................18

*Reich v. S. New Eng. Telecomms. Corp.*,
121 F.3d 58 (2d Cir. 1997)............................................................................................24, 25

Renfro v. Indiana Michigan Power Co.,
370 F.3d 512 (6th Cir. 2004)...............................................................................................10

*Salahuddin v. Goord*,
467 F. 3d 263 (2d Cir. 2006)..................................................................................................3

**Cases**                                                                    **Pages**

*Scott v. SSP Am., Inc.*,
    2011 U.S. Dist. LEXIS 32819 (E.D.N.Y. Mar. 29, 2011)..................................................18, 23

*Souza v. Sunbelt Auto Group, Inc.*, No.
    09-CV-1103,
    2010 U.S. Dist. LEXIS 33984 (D. Ariz. April 6, 2010)............................................................8

*Spradling v. City of Tulsa*,
    95 F.3d 1492 (10th Cir. 1996) ................................................................................................8

*Thomas v. Speedway SuperAm., LLC*,
    506 F.3d 496 (6th Cir. 2007) ................................................................................................18

*Torres v. Gristede's Operating Corp.*,
    628 F.Supp.2d 447 (S.D.N.Y. 2008) ...................................................................................10

*Scholtisek v. Eldre Corp.*,
    697 F. Supp. 2d 445 (W.D.N.Y. 2010)................................................................................10

*Wright v. Aargo Sec. Servs., Inc.*,
    No. 99-CV-9115, 2001 U.S. Dist. LEXIS 882
    (S.D.N.Y. Feb. 2, 2001) ..........................................................................................................8

*Yesmin v. Rite Aid of N.Y., Inc.*,
    2012 U.S. Dist. LEXIS 127655
    (E.D.N.Y. Sept. 6, 2012) ......................................................................................................18

*Yourman v. Giuliani*,
    229 F.3d 124 (2d Cir. 2000) ................................................................................................10

**Statutes**

29 C.F.R. § 541.100........................................................................................................................5

29 C.F.R § 541.100(a)(2) ..............................................................................................................2

29 C.F.R. § 541.100(a)(3) ............................................................................................................19

29 C.F.R. § 541.100(a)(4) ......................................................................................................19, 21

29 C.F.R § 541.105........................................................................................................................19

29 C.F.R. § 541.118(a) ..............................................................................................................9, 12

29 C.F.R. § 541.602................................................................................................................5, 10, 13

**Statutes**             **Pages**

29 C.F.R. § 541.604 ...................................................................................................... 13

29 C.F.R. § 541.604(a) ......................................................................................... 13, 14-15

29 C.F.R. § 541.604(b) ........................................................................................ 13, 14, 15

29 C.F.R. § 541.700(a) .................................................................................................. 16

29 C.F.R § 541.700(b) ................................................................................................... 17

57 Fed. Reg. 37 ............................................................................................................. 12

69 Fed. Reg. 22 ............................................................................................................. 13

69 Fed. Reg. 22122 ....................................................................................................... 21

69 Fed. Reg. 22130 ....................................................................................................... 21

69 Fed. Reg. 22131 ....................................................................................................... 22

29 U.S.C. § 207(a) .......................................................................................................... 4

29 U.S.C. § 207(o) .......................................................................................................... 4

29 U.S.C. § 207(o)(4) ...................................................................................................... 4

29 U.S.C. § 213(a)(1) ...................................................................................................... 5

29 U.S.C. § 216(b) ........................................................................................................ 24

29 U.S.C § 260 .............................................................................................................. 24

Fed. R. Civ. P. 56 ............................................................................................................ 1

Fed. R. Civ. P. 56(c) ....................................................................................................... 3

N.Y. C.L.S. Civ. S. Appx § 21.3 .................................................................................. 12

New York Civil Service Law Section 75 ...................................................................... 21

**Other Authorities**

Rule 56.1 ......................................................................................................................... 3

## PRELIMINARY STATEMENT

Defendant City of New York ("defendant") moves for summary judgment because plaintiff Robert Giallanzo ("plaintiff") fails to demonstrate that he was entitled to payment for his unused compensatory time under the Fair Labor Standards Act ("FLSA"). Plaintiff claims that, upon his retirement in 2020, defendant was required to pay him for the 837 hours and 50 minutes of unused compensatory time he accrued during his decades-long career with the New York City Department of Transportation ("DOT"). However, all but 59 hours and 30 minutes of this time was accrued while he was a salaried, executive, FLSA exempt Area Supervisor. Therefore, defendant was not required to pay him for that time and is entitled to summary judgment pursuant to Federal Rule of Civil Procedure 56.

To rescue his claims, plaintiff argues that he was never exempt because, despite all evidence to the contrary, he was an hourly employee throughout his career. He alleges this is evidenced by the fact that defendant: (1) compensated him at an hourly rate for overtime and a night shift differential; (2) paid him overtime and premium differentials, which made his income vary each pay period; and (3) hypothetically, could have docked plaintiff's pay for absences of less than a day for going absent without leave ("AWOL") or taking leave without pay ("LWOP") due to exhausted leave balances. However, plaintiff's compensation as an Area Supervisor undeniably passes the salary basis test. He was paid a regular guaranteed salary on a bi-weekly basis in addition to various premium hourly rates for overtime and night and holiday differential. These hourly rates were not wages but rather a function of dividing plaintiff's weekly salary by the minimum number of hours he was required to work. His pay was never deducted for quality or quantity of work or for absences of less than a day. Therefore, plaintiff was an exempt salaried employee and fails to state a claim under the FLSA.

Moreover, plaintiff's primary responsibility as an Area Supervisor was to maintain the City's arterial highways. Plaintiff managed dozens of work crews and laborers, supervised borough to Citywide projects, approved workers' timesheets, evaluated and supervised their work product, monitored their compliance with DOT policies, and initiated the disciplinary process against workers whenever they were violated. Plaintiff also reported to the Deputy Director of Arterials, who rarely met with him and "trusted [his] judgment to get the job done." Thus, plaintiff's primary duty was the "management of the [DOT] enterprise." *See* 29 CFR § 541.100(a)(2). Therefore, plaintiff was exempt from the FLSA after 2005, defendant was not required to pay him for the compensatory time he accrued as an Area Supervisor, and defendant is entitled to summary judgment.

Finally, plaintiff is not entitled to liquidated damages because defendant acted reasonably and in good faith. When plaintiff inquired into receiving a lump sum payment for his accrued time and leave, defendant conferred with human resources and payroll. Thereafter, defendant informed plaintiff that, as per City policy, he was not entitled to a lump sum for his accrued time and leave time as a non-managerial civil servant. However, defendant offered plaintiff to participate in the City's "v-status" program, whereby he could use up to one year of his accrued compensatory time and leave before going on retirement. However, plaintiff chose to immediately take a tax-free disability retirement, where he was declared disabled and began collecting his pension and social security disability insurance ("SSDI") checks. Therefore, as plaintiff could not collect SSDI while earning an income, defendant was reasonable in refusing to permit plaintiff to take advantage of "v-status" or receive a lump sum for his unused time and leave. Accordingly, plaintiff's claim for liquidated damages must be dismissed.

## STATEMENT OF FACTS

Defendant respectfully refers the Court to its Rule 56.1 Statement of Undisputed Material Facts ("Def's. 56.1"), dated September 24, 2021, including the Declaration of Kami Z. Barker, dated September 24, 2021, ("Barker Decl.") and all attached exhibits, the Declaration of Andrea Rookwood-Brown, dated September 23, 2021, ("Rookwood-Brown Decl."), and the Declaration of Michael DiVerniero, dated September 24, 2021, ("DiVerniero Decl.") for a complete statement of facts herein.

## ARGUMENT

"The Court must grant a motion for summary judgment if the pleadings, discovery [], and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law." *See Forbes v. Lighthouse Int'l*, No. 11 Civ. 7065, 2013 U.S. Dist. LEXIS 62454, at *12 (S.D.N.Y. May 1, 2013) (citing Fed. R. Civ. P. 56(c) and *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). "A genuine dispute over a material fact only arises if the evidence would allow a reasonable jury to return a verdict for the non-moving party." *Dister v. Cont'l Group, Inc*., 859 F.2d 1108, 1114 (2d Cir. 1988). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The party opposing summary judgment may not rely on conclusory allegations or unsubstantiated speculation or theories. *Salahuddin v. Goord*, 467 F. 3d 263, 273 (2d Cir. 2006). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomms., Inc., v. W.R. Grace & Co.*, 77 F. 3d 603, 615 (2d Cir. 1996).

Moreover, not every disputed factual issue is *material* in light of the substantive law that governs the case. Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude summary judgment. *See Affrunti v. Long Island Univ.*, No. 04-2710-cv, 2005 U.S. App. LEXIS 12372, at *3 (2d Cir. June 22, 2005) (explaining that a fact is

3

"material" if it affects the outcome of the suit and an issue is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party) (citing *Anderson*, 477 U.S. at 248). "The mere existence of a scintilla of evidence in support of the nonmoving party's position is likewise insufficient; there must be evidence on which the jury could reasonably find for him." *Forbes*, 2013 U.S. Dist. LEXIS 62454 at *13 (citing *Dawson v. County of Westchester*, 373 F.3d 265, 272 (2d Cir. 2004)). "If the non-moving party has failed to make a sufficient showing on an essential element of his case on which he has the burden of proof, then summary judgment is appropriate." *Forbes*, 2013 U.S. Dist. LEXIS 62454 at *13 (citations omitted). Because plaintiff cannot establish a genuine issue of material fact requiring a trial, summary judgment is warranted for defendant as a matter of law.

**POINT I**

**PLAINTIFF FAILS TO STATE A CLAIM FOR UNPAID COMPENSATORY TIME UNDER THE FLSA**

**A.    Plaintiff Has Fallen Under the Executive Exemption of the FLSA Since 2005 and Is Not Entitled to Payment for Unused Compensatory Time Accrued During that Time**

The FLSA generally requires that overtime compensation be paid to any non-exempt employee who works more than 40 hours in a workweek. 29 U.S.C. § 207(a). It also permits government agencies to compensate workers for overtime through compensatory time off, 29 U.S.C. § 207(o), and provides that, "upon termination of employment, an employee shall be paid for unused compensatory time, at a rate of compensation not less than (1) the average regular rate received by such employee during the last 3 years of the employee's employment, or (2) the final regular rate received by such employee, whichever is higher," 29 U.S.C. § 207(o)(4). However, employees who serve in a "bona fide executive, administrative or professional capacity" are exempt from these requirements. *Id.* at § 213(a)(1).

4

To meet the requirements of the executive exemption, an employee must:

- Be compensated on a salary basis at a rate of not less than $455 per week;

- Be engaged primarily in the management of the enterprise in which the employee is employed or a customarily recognized department or subdivision thereof;

- Customarily and regularly direct the work of two or more employees; and

- Have the authority to hire or fire employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100.

The evidentiary record overwhelmingly establishes that, since 2005, plaintiff has been correctly classified as a bona fide executive under the FLSA. He was, therefore, exempt from overtime compensation because he was a salaried Area Supervisor, who managed dozens of workers. *See* 29 U.S.C. § 213(a)(1); *see also* 29 C.F.R. § 541.100 (defining the terms); Def.'s 56.1 at ¶¶ 5-30. Thus, plaintiff's claims of unpaid compensatory time fail as a matter of law for all but 59 hours and 30 minutes, which plaintiff earned prior to being an executive Area Supervisor.

## 1. Plaintiff Was Paid on a "Salary Basis"

Plaintiff was paid on a salary basis since 2005. *See* Def.'s 56.1 at ¶¶ 5-10. An employee is paid on a salary basis if he "regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of the variations in quality or quantity of work performed." 29 C.F.R. § 541.602; *see also Havey v. Homebound Mortg., Inc.*, 547 F.3d 158, 165 (2d Cir. 2008). Plaintiff was paid a consistent bi-weekly salary. *See id.* at ¶ 31. While plaintiff was almost always paid more than this amount – because, even as an exempt employee, he received overtime in accordance with the applicable CBA – he was never paid less than his regular salary.

5

*See id.* at ¶ 32. Since this regular salary significantly exceeded the required threshold under the FLSA, plaintiff satisfies the first prong of the executive exemption test.

To illustrate plaintiff's exempt status, the Court need only compare the Blue-Collar Agreement for Area Supervisors with the Collective Bargaining Agreements ("CBA") for Highway Repairers ("HR") or Supervisor HRs – the FLSA covered titles, which plaintiff supervised as an exempt Area Supervisor. A comparison of these agreements demonstrates the disparities in pay and responsibility these positions have. First, the Blue-Collar Agreement clearly defines Area Supervisors as supervisory titles and lists their rate of pay as an obvious annual salary, which even plaintiff could not deny. *See* Exhibit "J" at pp. 2, 6; *see also* Exhibit "A" at 61:2-5 ("I wish [$63,527] was per hour.").

Further, the starting salary of an incumbent Area Supervisor Level I is $63,527 per annum, and for a Level II, it is $70,531. *See* Exhibit "J" at p. 6. They are also entitled to a night shift differential pay of ten percent (10%) whenever they work between 6:00 p.m. and 8:00 a.m., a holiday differential cash premium of fifty percent (50%) whenever they work on a holiday, 1 ½ times their hourly rate in cash for involuntary overtime they were required to work, and straight time pay in compensatory time off for every hour of authorized voluntary overtime they worked. *See* Exhibit "J" at pp. 3-6.

On the other hand, in 2017, an HR earned $44.28 per hour, except for weekends, holidays, and overtime, when they earned time and a half or $62.42 per hour. They also earned a night shift differential of ten percent (10%) whenever they worked between 6:00 p.m. and 8:00 a.m.. *See* Exhibit "D" at 2. Similarly, in 2017, a Supervisor HR earned $46.50 per hour, except Saturdays when they earned $69.75 per hour, and Sundays and holidays when they earned $93.00 per hour. They also earned time and a half in cash for overtime but were paid a night shift

differential of twenty-five percent (25%) for working between 6:00 p.m. and 8:00 a.m.. *See* Exhibit "G" at pp. 2-3.

The difference in how plaintiff was paid, as a salaried, FLSA exempt, Area Supervisor and how an hourly, FLSA covered, HR or Supervisor HR was paid is unmistakable. Yet, plaintiff argues that his final positions with the DOT fail the salary basis test because he was (1) paid an hourly rate for overtime and a night shift differential, (2) permitted to earn overtime, thereby making his salary variable, and (3) subject to having his pay docked if/when he went AWOL or took LWOP from having no accrued leave. *See* Pl.'s letter request to file a motion for summary judgment, dated July 1, 2021, at Dkt. No. 23. Plaintiff's arguments are meritless.

### (b) Plaintiff's Hourly Overtime and Night Shift Differential Rates Do Not Fail the Salary Basis Test

Plaintiff claims that he was an hourly employee throughout his career, despite clear and convincing documentation otherwise. He argues that this is evidenced by his paystubs, which reflect hourly rates for overtime and night shift differentials and list his accrued time and leave by the hour. *See* Dkt. No. 23. However, the hourly overtime and night shift differential rates depicted in plaintiff's paystubs are not wages but rather rates derived by a formula provided in the CBA and Citywide agreement. To determine these hourly rates, defendant divided plaintiff's annual salary by 2080, which represents the 40 hours he was expected to work per week by contract multiplied by the 52 weeks of the year. *See* Exhibit "J" at pp. 2, 6; *see also* Exhibit "K" at p. 7, Section 6(c). The Court in *Anani v. CVS RX Servs.*, 2011 U.S. Dist. LEXIS 57625, at *32 (E.D.N.Y. 2011), squarely rejected the proposition that such payroll practices fail the salary basis test, and so should the Court find here.

In *Anani*, the plaintiff disputed that he was a salaried employee because he was paid according to an hourly compensation rate that was based on the 44 hours he was expected to work

per week and because his total pay was a function of his compensation rate times hours. However, the employer calculated the plaintiff's annual base salary into an hourly rate solely for accounting purposes, and the Court found that such a practice was fully permitted. *Anani*, 2011 U.S. Dist. LEXIS 57625, *17-18.

Indeed, the Court noted that "'a payroll accounting system which calculates an exempt employee['] pay on an hourly basis does not indicate that the employee was not salaried and, thus, is not subject to the FLSA's minimum wage or overtime wage requirements.'" *Anani*, 2011 U.S. Dist. LEXIS 57625, *18 (citing *Wright v. Aargo Sec. Servs., Inc.*, No. 99-CV-9115, 2001 U.S. Dist. LEXIS 882, at *7 (S.D.N.Y. Feb. 2, 2001) (quoting *Palazzolo-Robinson v. Sharis Mgmt. Corp.*, 68 F. Supp. 2d 1186, 1192 (W.D. Wash. 1999))); *see also McGuire v. City of Portland*, 159 F.3d 460, 464 (9th Cir. 1998); *Spradling v. City of Tulsa*, 95 F.3d 1492, 1500 (10th Cir. 1996); *Souza v. Sunbelt Auto Group, Inc.*, No. 09-CV-1103, 2010 U.S. Dist. LEXIS 33984, at *2 (D. Ariz. April 6, 2010) ("Souza argues that he is entitled to summary judgment because Defendants' payroll records listed him as an hourly employee. The payroll classification of Souza is not dispositive. An employee may be labeled as hourly in the employer's books and yet actually qualify as salaried."); *Adams v. Niagara Mohawk Power Corp.*, No. 02-CV-1353, 2008 U.S. Dist. LEXIS 76375, at *6 (N.D.N.Y. Sept. 30, 2008); *DOL Wage & Hour Division Opinion Letter*, 2003 DOLWH LEXIS 3 (July 9, 2003) ("the tracking or accounting of actual hours worked by exempt employees does not violate the "salary basis" requirements.").

Moreover, "[w]here [] a portion of the employee's annual compensation comes in the form of additional compensation for overtime hours, courts have held that an employer tracking and recording an employee's wages in terms of hours is not dispositive of whether they were paid on a 'salary basis.'" *Anani*, 2011 U.S. Dist. LEXIS 57625, *19. To be sure, the *Anani* court pointed

8

to *Bell v. Callaway Partners, LLC*, No. 06-CV-1993, 2010 U.S. Dist. LEXIS 36564 (N.D. Ga. Feb. 5, 2010), which explained the rationale for why such evidence is less indicative of hourly employment when an employee is paid additional compensation in hourly increments.

> Whenever an employer pays a salaried employee his or her weekly salary plus "additional compensation" calculated as 1/40 of the weekly salary ("straight-time hourly amount") for any hours over 40, it is mathematically true that the weekly salary plus the "additional compensation" equals the straight-time rate times the total hours worked. That fact will always be the mathematical result of calculating the "additional compensation" by multiplying the "straight-time hourly amount" by the "hours worked for work beyond the normal workweek," as expressly approved by the DOL's regulations. An employer does not violate the DOL's salary basis test by doing exactly what that salary basis test expressly authorizes.

*Anani*, 2011 U.S. Dist. LEXIS 57625, *19 (quoting *Bell*, 2010 U.S. Dist. LEXIS 35664, at *16-17.). Therefore, defendant is entitled to summary judgment.

### (c) Plaintiff's Salary Was Not Subject to Improper Deductions

Evidence of plaintiff's compensation being a function of hours worked is only dispositive when combined with evidence of improper deductions. *Anani*, 2011 U.S. Dist. LEXIS 57625, *22 (citing *Bongat v. Fairview Nursing Care Center, Inc.*, 341 F. Supp. 2d 181, 185 (E.D.N.Y. 2004) (citing 29 C.F.R. § 541.118(a) (2003))). Thus, plaintiff claims that his compensation fails the salary basis test because, hypothetically, his pay could have been docked if he ever went AWOL or took LWOP for having no accrued leave. *See* Dkt. No. 23. However, plaintiff's argument is as faulty as it is frivolous.

9

According to CFR §541.602, employers can make reductions to an FLSA-exempt employee's salary when the employee is absent from work for one or more full workdays. However, "[d]ocking an employee's pay to reflect a partial day absence is not consistent with an intent to pay the employee on a salary basis under that test." *Scholtisek v. Eldre Corp.*, 697 F. Supp. 2d 445, 451 (W.D.N.Y. 2010) citing *Renfro v. Indiana Michigan Power Co.*, 370 F.3d 512, 516 (6th Cir. 2004) ("when an employer actually deducts from an employee's paycheck [because of a partial day absence] the employee is ineligible for the exemption" for salaried employees)(emphasis added); *accord Cowart v. Ingalls Shipbuilding, Inc.*, 213 F.3d 261, 265 (5th Cir. 2000); *Torres v. Gristede's Operating Corp.*, 628 F.Supp.2d 447, 457 n.6 (S.D.N.Y. 2008).

The standard for losing the exempt status based on improper deductions is met "if there is either an actual practice of making such deductions or an employment policy that creates a 'significant likelihood' of such deductions." *Auer v. Robbins*, 519 U.S. 452, 461 (1997); *Ahern v. County of Nassau*, 118 F.3d 118 (2d Cir. 1997). "Actual deductions from pay are neither necessary for an employee to be found non-exempt, nor are they sufficient." *Yourman v. Giuliani*, 229 F.3d 124, 130 (2d Cir. 2000). However, it is of no matter here because plaintiff does not claim that defendant deducted his pay for absences of less than a day, only that it could have occurred.

"[I]n the absence of evidence that … deductions have been made in the past, denial of the exemption is appropriate only if there is 'a clear and particularized policy'—one which 'effectively communicates' that deductions will be made in specified circumstances." *Kelly v. City of Mount Vernon*, 162 F.3d 765 (2d Cir. 1998) (citing *Auer*, 519 U.S. at 462, 461). Specifically, plaintiff must be able to "point to [a] rule that state[s] that if [he] commits a specific infraction, [his] pay [will] be docked." *Ahern*, 118 F.3d at 122. Here, plaintiff can do no such thing.

Plaintiff admits that he never went AWOL or took LWOP and that his pay was never docked, let alone for a period of less than a day or for reasons of having exhausted his leave. *See* Exhibit "A" at 30:11-3 and 32:6-7. Moreover, even if plaintiff *had* been in that predicament, his pay would not have necessarily been docked because he could have borrowed from his own balance or accepted leave from a donor colleague. *See* Exhibit "R" at 30:8-15.[1] Plaintiff cannot demonstrate that DOT had an actual practice of docking his or any other exempt employee's pay for absences of less than a day or that it had a clear and particularized policy that created a significant likelihood that his pay would be docked under such circumstances. Indeed, the only thing plaintiff demonstrates is his occasional use of annual leave for absences of less than the day.

This is insufficient evidence for removing his executive salaried exemption. *See Barner v. City of Novato*, 17 F.3d 1256, 1261-1262 (9th Cir. 1994) (reduction in paid leave time for absences of less than one day did not affect the plaintiffs' status as salaried employees even where the employer's policy was to leave to the manager's discretion whether to dock their pay if leave was exhausted) (citing *International Ass'n of Fire Fighters, Alexandria Local 2141 v. City of Alexandria, Va.*, 720 F. Supp. 1230, 1232 (E.D. Va. 1989) ("the docking of leave or accrued compensatory time for absences of less than an entire day [does not] defeat salaried status"), *aff'd without opinion*, 912 F.2d 463 (4th Cir. 1990)); *see also Aaron v. City of Wichita*, 54 F.3d 652, 658-59 (10th Cir. 1995) ("Neither the fact that [plaintiffs'] accrued leave could be deducted for absences, nor the fact that they were paid overtime, nor the fact that their paychecks indicated the number of hours covered contradicts the conclusion that they regularly received a 'predetermined amount constituting . . . part of [their] compensation, which [was] not subject to reduction because

---

[1] In fact, plaintiff admitted to once participating in the DOT's leave donation program whereby he donated some of his own leave time to a colleague who was sick and had exhausted his leave. *See* Exhibit "A" at 53:20-54:12.

of variations in the quality or quantity of work performed.' 29 C.F.R. § 541.118(a). We therefore

hold that the fire captains, fire battalion chiefs, and fire division chiefs were paid on a salary

basis.").

   Moreover,

> an employee of a public agency … shall not be
> disqualified from exemption … on the basis that such
> employee is paid according to a pay system …which
> requires the public agency employee's pay to be
> reduced or such employee to be placed on [LWOP]
> for absences, for personal reasons or because of
> illness or injury of less than one work-day when
> accrued leave is not used by an employee because (1)
> permission for its use has not been sought or has been
> sought and denied; or (2) the employee chooses to
> use [LWOP].

*Barner*, 17 F.3d at 1263 (citing 57 Fed. Reg. 37,677 (August 19, 1992)).

   New York City workers are controlled by New York Civil Service Law, which

strictly regulates when and how employees must use their leave time. *See* N.Y. C.L.S. Civ. S.

Appx § 21.3. Moreover, New York City policy requires that absences of any kind must be charged

to the employee's leave. *See* Exhibit "P" at ¶ 18. Therefore, according to 57 Fed. Reg. 37,677,

plaintiff's exempt status cannot be reversed simply because defendant relied on these principles of

public accountability. Ultimately, plaintiff cannot point to a single policy that clearly required his

pay be docked for absences of less than a day. Thus, plaintiff fails to demonstrate that he was an

hourly employee, and his Complaint should be dismissed on summary judgment.

   **(d) Plaintiff's Additional Income Does Not Violate the Salary Basis Test Based
     on 29 C.F.R. § 541.604**

   Finally, plaintiff argues that he was an hourly employee because his paystubs reflect

variable earnings due to additional income earned from, *inter alia,* overtime. *See* Dkt. No. 23.

"Where, as here, guaranteed compensation meets the requirements of the salary basis test in section

602, payments of additional compensation on a non-salary basis can destroy the exemption if the employees guaranteed compensation does not bear a reasonable relationship to his actual compensation." *Anani*, 2011 U.S. Dist. LEXIS 57625, *26. Section 604(b) states that the reasonable relationship test "will be met if the weekly guarantee is roughly equivalent to the employee's usual earnings at the assigned hourly, daily or shift rate for the employee's normal scheduled workweek." *Id.* (quoting 29 C.F.R. § 541.604). The purpose of the reasonable relationship requirement is to ensure "that the salary guarantee for [employees whose actual pay is computed on an hourly, shift or daily basis] is a meaningful guarantee rather than a mere illusion." *Id.* (quoting DOL Final Rules, 69 Fed. Reg. at 22, 184).

Since plaintiff's compensation was paid on a "salary basis" under section 602, *see* Point I(A)(1)(a), *supra*, the relevant inquiry is whether the hourly overtime rate he was paid was equivalent to his "earnings" being computed on an hourly basis. *Anani*, 2011 U.S. Dist. LEXIS 57625, *28. Such a determination depends on whether plaintiff's compensation structure fell under section 604(a) or section 604(b). *Id.* at *29 (citing *Holladay v. Burch, Oxner, Seale Co., CPA's, PA*, No. 07-CV-3804, 2009 U.S. Dist. LEXIS 17831, (D. S.C. March 6, 2009)).

Section 604(a) provides,

> An employer may provide an exempt employee with additional compensation without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly-required amount paid on a salary basis. … Such additional compensation may be paid on any basis (e.g., flat sum, bonus payment, straight-time hourly amount, time and one-half or any other basis), and may include paid time off.

29 CFR 541.604(a).

On the other hand, Section 604(b) provides,

> An exempt employee's earnings may be computed on an hourly, a daily or a shift basis, without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly required amount paid on a salary basis regardless of the number of hours, days or shifts worked, and a reasonable relationship exists between the guaranteed amount and the amount actually earned. The reasonable relationship test will be met if the weekly guarantee is roughly equivalent to the employee's usual earnings at the assigned hourly, daily or shift rate for the employee's normal scheduled workweek. … The reasonable relationship requirement applies only if the employee's pay is computed on an hourly, daily or shift basis. ...

29 CFR 541.604(b).

Here, plaintiff does not claim that he was paid his entire compensation at an hourly rate like the plaintiffs in *Anani* and the cases cited within. Rather, he only argues that his compensation fails the salary basis test because his income varied each pay period based on the amount of overtime and night differential he earned at an hourly rate. *See* Dkt. No. 23. Therefore, by the statute's plain reading and plaintiff's own admissions, he squarely falls within Section 604(a) of the statute,[2] making him exempt from the protections of the FLSA.[3] *Anani*, 2011 U.S.

---

[2] Since plaintiff's guaranteed salary was for 40 hours of work, then any additional compensation was payment for hours "beyond the normal workweek" and did not need to satisfy the reasonable relationship test in section 604(b). *Anani*, 2011 U.S. Dist. LEXIS 57625, *30-31 (citing *Holladay*, 2009 U.S. Dist. LEXIS 17831, at *7 and *Caperci v. Rite Aid Corp.*, 43 F. Supp. 2d 83, 96 n.12 (D. Mass. 1999) (distinguishing a compensation structure where an employer pays an otherwise exempt employee overtime for hours worked beyond an employee's regularly scheduled hours from one where an employer pays the minimum salary required by the regulation for ten hours of work and then "overtime" for hours fluctuating between thirty and fifty per week such that the "'overtime' in reality was regular pay that varied with the quantity of work available"). "The fact that where, as here, an employer provides an otherwise exempt employee with a monetary incentive to work overtime does not negate the benefit of a guaranteed salary that is not subject to deductions for hours worked less than 40 hours a week." *Anani*, 2011 U.S. Dist. LEXIS 57625, *31-32.

[3] Even if plaintiff's compensation fell within Section 604(b), it would nonetheless pass the salary basis test because plaintiff's overtime and night differential hourly rates are reasonably related to plaintiff's base salary and determined by his CBA. Indeed, defendant determined plaintiff's hourly rate by dividing his annual salary by 2080 hours (or 52 weeks multiplied by 40 hours). *See* Exhibit "J" at pp. 2, 6; *see also* Exhibit "K" at p. 7, Section 6(c).

Dist. LEXIS 57625, *29, *32-34 (citing DOL Wage & Hour Division Opinion Letter, 1999 DOLWH LEXIS 34, (Apr. 1, 1999) ("Where an employee is paid on a salary basis however, it continues to be our opinion that extra compensation by the hour for hours worked in excess of 40 in a workweek, paid in addition to an exempt employee's guaranteed salary, would not defeat the exempt status of an otherwise exempt  employee."); *Acs v. Detroit Edison Co.*, 444 F.3d 763, 768 (6th Cir. 2006) ("That Detroit Edison chooses to pay what it terms 'straight-time' overtime compensation—in other words, additional compensation at the exempt employee's 'hourly' rate for hours worked beyond 40 in a work week—does not violate the salary-basis test."); *Fife v. Harmon*, 171 F.3d 1173 (8th Cir. 1999) (hourly overtime payments for hours worked in excess of 40 in a week does not defeat the employee's exempt status); *Kennedy v. Commonwealth Edison Co.*, 252 F. Supp. 2d 737 (C.D. Ill. 2003) (ruling that a bonus plan that provided additional compensation to administrative employees for additional hours worked beyond the traditional 40-hour workweek was not inconsistent with the salary basis test)). Thus, plaintiff fails to state a claim, and defendant is entitled to summary judgment as a matter of law.

### 2.  Since 2005, Plaintiff's Primary Duty Has Been Management

An employee's "primary duty" is the "principle, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). In order to determine whether an employee is primarily engaged in management duties, the following non-exhaustive list of factors should be considered: (i) the relative importance of an employee's exempt duties as compared with other types of duties; (ii) the amount of time spent performing exempt work; (iii) the employee's relative freedom from direct supervision; and (iv) the relationship between an employee's salary and the wages paid to other employees for the kind of non-exempt work performed by the employee. *Id.* The evidentiary record is unequivocal that each of these factors weigh in favor of finding that plaintiff was primarily engaged in management duties.

As an Area Supervisor, plaintiff was charged, first and foremost, with supervising dozens of work crews for the DOT. *See* Exhibit "A" at 11:22-12:5. In fact, plaintiff admits that he supervised the maintenance of arterial highways, including assigning crews, investigating and answering 311 complaints, and completing administrative work like timesheets. *See id.* at 20:10-21; *see also* Exhibit "M" at 4. Moreover, it is uncontroverted that Area Supervisors perform the following managerial functions: select and assign work crews for jobs, maintain and oversee the equipment and vehicles in the yard, manage the time for work needed to be completed with respect to the number of employees on leave, and manage and monitor every aspect of the work performed by crews. *See* Exhibit "L."

For purposes of the FLSA exemption analysis, an employee's "primary duty" is not necessarily his or her most time-consuming task. Rather, it is the principal or most important duty performed by the employee. 29 C.F.R § 541.700(a). While the amount of time employees spent performing non-exempt work can be considered in evaluating an employee's primary duty, "it is not the sole test, and nothing . . . requires that exempt employees spend more than 50 percent of their time performing exempt work." *Id.* at § 541.700(b).

Here, it is undisputed that management was plaintiff's most important duty as an Area Supervisor of Highway Management. Indeed, plaintiff conceded this point during his deposition and readily admitted that his primary responsibility was to supervise the maintenance of arterial highways, assign crews, investigate and answer complaints, and complete administrative work like timesheets. *See* Exhibit "A" at 20:10-21; *see also* Exhibit "M" at 4. In any event, his 2007 grievance, where he claimed, as a Level I Area Supervisor, to be performing the supervisory tasks of a Level II Area Supervisor, truly demonstrates how integral plaintiff's managerial responsibilities were.

16

The arbitration award in plaintiff's grievance described the typical duties of both Level I and Level II Area Supervisors as including: scheduling work projects, assigning proper vehicles, equipment, and crews to various work locations, accompanying crew supervisors to instruct on repairs, recommending diverse highway maintenance, enforcing agency regulations, and inspecting work. Their responsibilities only differentiated by means of the latitude for independent judgment they had and the jurisdiction by which they supervised crews. That is, Level I Supervisors were meant to manage borough segments and have some latitude in making independent decisions whereas Level II Supervisors were to have wide latitude for independent judgment and supervise crews borough-wide, over multiple boroughs, and sometimes even citywide. *See* Exhibit "M" at pp. 2-3.

Moreover, the award explained that plaintiff, in addition to the other grievants, ran borough-wide programs, decided which crews to respond to which complaints and which actions to take in emergencies, and, generally, managed all arterial highway maintenance for the City. Plaintiff further reported to the Deputy Director of Arterials, who rarely met with plaintiff and "trusted [his] judgment to get the job done." Indeed, the only contact they regularly had was over the phone to discuss which pothole crews to dispatch. *See id.* at 4-5. Thus, it is uncontroverted that plaintiff's primary duty as an Area Supervisor was management, and he has, therefore, been exempt from the protections of the FLSA since 2005.

Further stated in the most basic terms, highway maintenance crews could not function without plaintiff's oversight, and therefore, regardless of the amount of time plaintiff may have spent on non-managerial tasks, plaintiff's managerial responsibilities were his most important duties. *See e.g. Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 564-65 (2d Cir. 2012) (affirming district court's determination that plaintiffs were exempt executives even though they

spent some time sweeping floors and performing other non-managerial work); *Thomas v. Speedway SuperAm., LLC*, 506 F.3d 496, 505 (6th Cir. 2007) (affirming holding that the plaintiff's managerial duties, including training and assigning work to her subordinates, were more important than her other duties of stocking merchandize, sweeping floors and cleaning bathrooms); *Jones v. VA. Oil Co.*, 69 F. App'x 633, 638 (4th Cir. July 23, 2003) (affirming ruling that manager, who "spent approximately 75-80 percent of her time carrying out basic line worker tasks" was a bona fide executive); *Yesmin v. Rite Aid of N.Y., Inc.*, 2012 U.S. Dist. LEXIS 127655 (E.D.N.Y. Sept. 6, 2012) ("[P]laintiff's nonexempt tasks, such as cleaning and organizing magazines on the shelves, were minor compared to her primary duty of managing the store and the hourly employees."); *Scott v. SSP Am., Inc.*, 2011 U.S. Dist. LEXIS 32819, *14 (E.D.N.Y. Mar. 29, 2011) (holding that the plaintiff's managerial responsibilities were her most important even though she claimed she spent 90% of her time performing non-exempt tasks); *Guinup v. Petr-All Petroleum Consulting Corp.*, 2010 U.S. Dist. LEXIS 86280, at *22 (N.D.N.Y Aug. 23, 2010) (holding that manager was bona fide executive because even though she performed many of the same tasks as hourly employees, the business could not have operated successfully "unless the Plaintiff performed her managerial functions"). Therefore, plaintiff was exempt, and he fails to state a claim.

### 3. Plaintiff Customarily and Regularly Directed the Work of Two or More Employees

A bona fide executive must customarily and regularly direct the work of two or more other employees. 29 C.F.R. § 541.100(a)(3). Here, plaintiff managed dozens of work crews composed of HRs and Supervisor HRs. *See* Exhibit "A" at 11:22-12:5. Thus, since 2005, plaintiff always directed the work of more than two employees, and he is not entitled to be paid for any compensatory time he accrued during under the position of Area Supervisor.

### 4. Plaintiff Makes Suggestions and Recommendations Regarding the Status of DOT Employees that Are Given Particular Weight

18

Bona fide executives must have the authority to hire or fire, or their suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees must be given particular weight. *See* 29 C.F.R. § 541.100(a)(4). Whether an employee's suggestions are afforded "particular weight" is determined by analyzing whether it is part of the employee's job duties to make such suggestions, the frequency with which these recommendations are made, and the frequency with which these suggestions are relied upon. *Id.* at § 541.105. This is precisely what plaintiff did as an Area Supervisor.

Plaintiff consistently made recommendations, which were afforded considerable weight and not only impacted the status of DOT and its highway crews but all the City's arterial highways. Indeed, as addressed above, plaintiff reported to the Deputy Director of Arterials, who rarely met with him and "trusted [his] judgment to get the job done." Moreover, the only contact they regularly had was over the phone to discuss which pothole crews to dispatch. *See id.* at 4-5.

Further, plaintiff testified that he was charged with approving his subordinates' weekly timesheets in CityTime, thereby enabling them to get paid. *See* Exhibit "A" at 20:10-21; *see also* Exhibit "M" at 4. Plaintiff likewise approved their vacation requests and made determinations about whether a subordinate's absence was excused or unexcused. Plaintiff was also tasked with evaluating the performance of his workers on a formal and informal basis. This evaluation process includes completing a formal annual performance review for each HR and Supervisor HP he supervised. On the formal performance evaluation forms, plaintiff had the authority to recommend whether a worker's employment should be retained or whether they should be terminated. Plaintiff also had the authority to recommend that a worker be transferred. Exhibit "O" at ¶¶ 7-9.

Plaintiff likewise played a crucial role in monitoring his workers' compliance with DOT policies and, importantly, in initiating the disciplinary process when necessary. Area Supervisors regularly issue discipline when appropriate. For example, plaintiff issued written discipline to workers under his supervision for a broad range of issues, including work product, timekeeping practice, improper behavior, and improper use of DOT property. Indeed, the Area Supervisor's role of initiating the disciplinary process is critical in being able to sustain more serious charges against DOT highway repair workers – up to and including termination – in formal disciplinary proceedings. *See* Exhibit "O" at ¶¶ 10-12.

As such, plaintiff unquestionably maintained authority – or made recommendations and suggestions that were afforded substantial weight – over material aspects of his subordinates' employment. That there were managers above Area Supervisors does not negate his managerial discretion either. *See Amash v. Home Depot U.S.A., Inc.*, 2014 U.S. Dist. LEXIS 133214, *20 (N.D.N.Y Sept. 23, 2014) (internal citation omitted) ("[E]ven where a manager's discretion is limited by upper management, the manager may still be considered an exempt employee.").

Admittedly, plaintiff did not establish his workers' wage rates or benefits, nor did he make unilateral hiring decisions. However, no DOT employee – up to and including the Commissioner – has the authority to unilaterally make these decisions. In fact, no executive can change an HR, Supervisor HR, or Area Supervisor's pay rates, because they are collectively bargained for. Nor can an executives make unfettered hiring decisions, because hiring protocols are set by the New York Civil Service Law. Similarly, no DOT employee can unilaterally terminate plaintiff because his employment is governed by collective bargaining disciplinary procedures as well as Section 75 of the New York Civil Service Law. *See* Exhibit "O" at ¶ 13.

20

The FLSA's regulations specifically address the unique circumstances applicable to supervisors employed in the public sector. *See* 69 Fed. Reg. 22122, 22130 (2004) (noting that "the authority to hire or fire . . . only exists at the highest levels in public employment" because of such factors as "unionization within the state and local public sector and statutory constraints, such as civil service laws, which have been developed to protect employees in the public sector from various factors" and that "civil service rules . . . dictate the use of a board to make hiring or firing decisions."). The "particular weight" language in Section 541.100(a)(4) of the C.F.R. was added, in part, as a safeguard to ensure that civil service employees – who did not possess hiring or firing authority – were still eligible for the executive exemption:

> That definition clarifies that an executive does not have to possess full authority to make the ultimate decision regarding an employee's status, such as where a higher level manager or a personnel board makes the final hiring, promotion or termination decision. With this clarification, and with the clarification that this rule encompasses other tangible employment actions, we have determined that this requirement should not pose a hardship since public sector supervisory employees provide recommendations as to hiring, firing or other personnel decisions that are given "particular weight" to the extent allowed under civil service laws and thus may meet this requirement for exemption.

69 Fed. Reg. 22131 (2004). Therefore, FLSA's legislative intent was not to preclude the executive exemption from applying to civil service supervisors – such as Area Supervisors – whose authority is circumscribed as a result of civil service laws and the collective bargaining process.

Courts consistently recognize the unique circumstances of supervisors employed in the public sector. For example, in *Murphy v. Town of Natick*, 516 F. Supp. 2d 153 *13-14 (D. Mass. 2007), the Court found that superior officers (lieutenants and sergeants) were exempt from FLSA's overtime provisions pursuant to the executive exemption despite that, in accordance with

the civil service system, they did not have the ultimate authority to hire or fire patrol officers. The

*Murphy* court noted that the plaintiffs did "play a significant role in disciplinary determinations"

and that "while they are constrained by civil service rules in exercising [their hiring] functions, if

the test were to be interpreted too literally, virtually no superior officer would be exempt under the

FLSA, a result contrary to the purpose of an Act intended to protect ordinary wage earners who

have little or no discretion over the manner in which they perform their jobs, and not those who

make and enforce workplace rules." *Id.*; *Monroe Firefighters Ass'n v. City of Monroe*, 600 F. Supp.

2d 790, 32-33 (W.D. La. 2009) (holding that deputy fire chiefs were exempt executives due to

their role in the disciplinary process and completing performance evaluations for subordinates and

noting that "[i]t is undisputed that Deputy and District Chiefs could not hire or promote employees,

but given the nature of civil service employment, this fact contributes little to the analysis").

Even in the private sector, the absence of hiring and firing authority is not fatal to

a finding that a supervisor meets the requirements of the FLSA's executive exemption when other

elements of managerial authority are present. *See e.g. Paganas v. Total Maint. Solution, LLC*, 2016

U.S. Dist. LEXIS 167580, 33-34 (E.D.N.Y. Dec. 5, 2016) (holding employee was an exempt

executive despite the inability to hire or fire because he had the authority to recommend discipline

and direct work of subordinates); *Scott v. SSP Am., Inc.*, 2011 U.S. Dist. LEXIS 32819, 48

(E.D.N.Y. Mar. 29, 2011) (finding that the plaintiff met the requirements of the executive

exemption despite not having the authority to hire or fire); *Mota v. Imperial Parking Sys.*, 2010

U.S. Dist. LEXIS 87593, 17 (S.D.N.Y. Aug. 24, 2010) (ruling that the executive exemption applied

because "[w]hile [plaintiff] maintains that he had no authority to hire and fire or discipline

employees, he has acknowledged that his advice about employee performance and discipline was

followed"). Accordingly, there is no material factual dispute that, since 2005, plaintiff has satisfied

each prong of the executive exemption test and was therefore properly classified as an exempt employee. As such, his claim for unpaid compensatory time performed as an Area Supervisor should be dismissed.

**B.      All but 59 Hours and 30 Minutes of Plaintiff's Compensatory Time was Earned as an Exempt Employee**

Finally, plaintiff claims that most of his compensatory time was accrued in an FLSA covered title. However, this is patently false, as demonstrated by the documents plaintiff himself produced. *See* Leave Balance Report from Plaintiff, Exhibit "Y;" *see also* CHAMP report, Exhibit "T;" *see also* Waiver of Excess Balance sheet, Exhibit "U;" Plaintiff's Leave Balance Report, Exhibit "V;" Rookwood-Brown Decl., Exhibit "P." Thus, defendant is entitled to summary judgment on plaintiff's claims of unpaid compensatory time for compensatory time he accrued prior to 2005 in an FLSA covered title.

**C.      Liquidated Damages Are Not Recoverable Because Defendant Acted in "Good Faith"**

If an underlying violation of the FLSA is established, the FLSA permits the Court to award liquidated damages against the employer in an amount equal to the unpaid wages at issue. But liquidated damages are not available if the employer establishes it acted in good faith. 29 U.S.C. § 216(b). Whether liquidated damages are appropriate is a matter of law for a court, not a jury, to determine. *See, e.g., Brock v. Superior Care Inc.*, 840 F.2d 1054, 1063 (2d Cir. 1988) (citing *McClanahan v. Mathews*, 440 F.2d 320, 322 (6th Cir. 1971)) (holding that an award of liquidated damages under the FLSA is within the discretion of the district court). Courts have discretion to deny liquidated damages where the employer shows that, despite its failure to pay appropriate wages, it acted in subjective good faith with objectively reasonable grounds for believing that its acts or omissions did not violate the FLSA. 29 U.S.C § 260; *Barfield v. New York City Heath & Hospitals Corp.*, 537 F.3d 132 (2d Cir. 2008).

To establish that an employer acted with the requisite subjective good faith, the employer must show that it took "active steps to ascertain the dictates of the FLSA and then act[ed] to comply with them." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999); *see also Reich v. S. New Eng. Telecomms. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997). Here, plaintiff has not established any violation for the compensatory time he earned as an Area Supervisor. However, even if the Court denies summary judgment regarding any portion of his compensatory time, the undisputed material facts show that defendant took active steps to ascertain and comply with all prevailing statutes, thereby precluding an award of liquidated damages.

### 1.  Defendant Demonstrated Subjective Good Faith as a Matter of Law

In determining whether plaintiff was entitled to a lump sum payment for his accrued compensatory time at retirement, defendant took active, calculated steps to ensure that plaintiff received a lawful retirement. These measures included: (1) discussions with human resources and payroll; (2) offering plaintiff the opportunity to take advantage of "v-status" before going on retirement; and (3) requesting that plaintiff provide more information and documentation regarding his grievance around this issue. These measures taken by defendant clearly constitute "active steps to ascertain the dictates of the FLSA." *Barfield*, 537 F.3d at 151 (finding that a thorough review and analysis of employees' pay records constitutes an "active step"). However, plaintiff refused to put off his retirement to enter into "v-status," began collecting his pension and SSDI checks, filed an insufficient Step III grievance request, refused to provide information that OLR requested, and filed a federal complaint.

The evidence is overwhelming that defendant relied on the advice internal personnel and labor relations experts in ensuring that plaintiff was fully compensated at retirement. This is sufficient to demonstrate subjective good faith. *See Reich*, 121 F.3d at 72; *Cross v. Arkansas*

*Forestry Comm'n*, 938 F.2d 912, 917-18 (8th Cir. 1991) (finding that the employer's reliance on the incorrect advice provided by internal personnel experts established that the employer engaged in a subjective good faith effort to comply with the FLSA); *Inclan v. New York Hospitality Grp., Inc.*, 95 F. Supp. 3d 490, 504 (S.D.N.Y. 2015). Therefore, defendant is entitled to summary judgment on liquidated damages.

### 2.  Defendant's Conduct Was Objectively Reasonable

In addition to demonstrating subjective good faith, the evidence is unequivocal that defendant's belief that it was in full compliance with the FLSA was objectively reasonable. While plaintiff contends that defendant failed to pay the compensatory time he was allegedly entitled to, there is no evidence that DOT denied paying regular retirees their non-exempt compensatory time. Therefore, to the extent the Court declines to dismiss plaintiff's claims for any portion of his unpaid compensatory time, defendant is entitled to summary judgment on its good faith defense. Plaintiff is precluded from an award of liquidated damages on these claims because the evidence establishes that defendant engaged in subjective good faith attempts to comply with the FLSA and that defendant's efforts to comply – and its belief that it did fully comply – were objectively reasonable.

### <u>CONCLUSION</u>

For the foregoing reasons, defendant respectfully request that the Court grant its motion for summary judgment, and dismiss the Complaint in its entirety with prejudice, together

with such other and further relief as the Court deems just and proper.

Dated: Bronx, New York
September 24, 2021

                                       **GEORGIA M. PESTANA**
                                       Corporation Counsel of the
                                         City of New York
                                       Attorney for Defendant
                                       100 Church Street, Room 2-178
                                       New York, New York 10007
                                       (646) 960-1103
                                       kbarker@law.nyc.gov


By:                   /s/
                     Kami Z. Barker
                     Senior Counsel