UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ROBERT GIALLANZO,

Plaintiff,

-v-

CITY OF NEW YORK,

Defendant.

---

20 Civ. 8509 (PAE) (JW)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

Plaintiff Robert Giallanzo, a former employee of the New York City Department of
Transportation ("DOT"), brings overtime claims under the Fair Labor Standards Act ("FLSA"),
29 U.S.C. § 201 *et seq.*, against the City of New York ("the City").  Giallanzo claims that, as of
his retirement on January 14, 2020, he had accrued 837 hours and 50 minutes of unused
compensatory time.  He claims that these all reflected unpaid overtime work within the scope of
the FLSA, and that the City wrongly denied him a cash buyout for such hours upon his
retirement.  He also seeks liquidated damages and reasonable attorneys' fees and costs.

With discovery complete, the City has moved for partial summary judgment.  The City
acknowledges that Giallanzo is eligible for a cash buyout for the overtime hours he accrued in
FLSA-covered positions.  And it concedes that it owes Giallanzo for 59 hours and 30 minutes of
overtime work, which, it concedes, he accrued in his earlier positions at DOT, before he was
promoted to the post of Area Supervisor ("AS").  But the City makes two principal arguments to
cap its liability at those hours.  First, it argues that during the substantial portion of his DOT
employment in which he served as an AS, Giallanzo fell within the FLSA's exemption for
employees who work in a "bona fide executive . . . capacity."  *See* 29 U.S.C. § 213(a)(1) (the

"executive exemption"). As a result, it argues, Giallanzo could not have accrued any FLSA-covered overtime after September 23, 2005. Second, the City argues, his overtime hours were correctly recorded on his biweekly paystubs as 59 hours and 30 minutes. It argues that a separate category of hours reflected on the paystubs, known as "COMP TIME," captures a different category of hours. That category, it contends, is based on a union agreement under which employees earn compensatory time for work under other circumstances. The City thus seeks summary judgment as to liability in its favor on all but 59 hours and 30 minutes of overtime.

Giallanzo disputes both arguments. He argues that the executive exemption did not apply to him in his role as an AS. And, he argues, he worked substantial overtime hours for which he has not received a buyout payment at retirement. The City's records, he contends, inaccurately tabulate these hours. Giallanzo cross-moves for summary judgment as to all 837 hours and 50 minutes of compensatory time listed on his pay-stubs. He seeks $47,000 in damages, liquidated damages in the same amount, and attorneys' fees and costs.

Before the Court is the detailed Report and Recommendation (the "Report") of the Honorable Kevin Nathaniel Fox, former United States Magistrate Judge.[1] Dkt. 51. Central among its recommendations, the Report concludes that the City has not adduced sufficient evidence to establish that Giallanzo's work as an Area Supervisor fit within the executive exemption. The Report thus recommends that (1) the City's partial motion for summary judgment be denied in full; (2) Giallanzo's motion for summary judgment be granted with respect to the fact of the City's liability; and (3) because the pay records adduced leave Giallanzo's pay rate, and thus the amount of his damages, unclear, a trial be held limited to the tabulation of damages. *Id.* The City objects to several of the Report's recommendations. Dkt.

---

[1] Judge Fox retired after submitting the Report.

56 ("Def. Obj."). Giallanzo does not object to any recommendation, but he has responded to the City's objections. Dkt. 57 ("Pl. Resp. Obj.").

Based on its review of the Report, the City's objections, and Giallanzo's reply, the Court adopts some, but not all of, the Report's recommendations. Most important, the Court departs from the Report in that the Court finds that the City *has* adduced sufficient evidence on which a jury could find the executive exemption applies. However, the Court holds, there is a dispute of material fact as to one of the four required elements of the exemption. Thus, whether the exemption applies must be resolved at trial and cannot be resolved on summary judgment. The Court, in accord with the Report, does enter summary judgment for Giallanzo as to liability with respect to 59 hours and 30 minutes of work, as to which the FLSA's overtime pay requirements undisputedly apply.

# I.      Background

## A.      Factual Background[2]

### 1.      Giallanzo's Hiring and Early Employment

On September 6, 1988, DOT hired Giallanzo as a highway repairer ("HR"). Pl. 56.1 ¶ 1.

As an HR, Giallanzo laid asphalt and concrete, filled road depressions and excavations with tar,

---

[2] The Court draws its account of the underlying facts of this case from the parties' submissions in support of and in opposition to the parties' summary judgment motions. These include, (1) in support of the City's motion for partial summary judgment, the City's memorandum of law, Dkt. 31 ("Def. Mem."); the City's Local Rule 56.1 statement, Dkt. 32 ("Def. 56.1"); the first declaration of Kami Z. Barker, Dkt. 33 ("Barker Decl. 1"), and attached exhibits, including Giallanzo's deposition, Dkt. 33-1 ("Giallanzo Dep."), the declarations of Michael Diverniero, Dkt. 33-15 ("Diverniero Decl.") and Andrea Rookwood-Brown, Dkt. 33-16 ("Rookwood-Brown Decl."), and Rookwood-Brown's deposition, Dkt. 33-18 ("Rookwood-Brown Dep."); (2) in support of Giallanzo's motion for summary judgment and opposition to the City's motion, Giallanzo's declaration, Dkt. 36 ("Giallanzo Decl. 1"), Giallanzo's memorandum of law, Dkt. 37 ("Pl. Mem."); and Giallanzo's Local Rule 56.1 statement, Dkt. 38 ("Pl. 56.1"), and attached exhibits; (3) in opposition to Giallanzo's motion for summary judgment, the City's memorandum of law, Dkt. 46 ("Def. Opp. Mem."); Barker's second declaration, Dkt. 47 ("Barker Decl. 2"), and attached exhibits; the declaration of Gordon Goldberg, Dkt. 48 ("Goldberg Decl."); and the City's Rule 56.1 counterstatement, Dkt. 49 ("Def. 56.1 Resp."); and (4) Giallanzo's supplemental declaration, Dkt. 50-3 ("Giallanzo Decl. 2").

Citations to a party's Rule 56.1 statement incorporate by reference the materials cited therein. Where facts stated in a party's Rule 56.1 statement are supported by testimonial or documentary evidence, and denied by a conclusory statement by the other party without citation to conflicting testimonial or documentary evidence, the Court finds such facts true. *See* S.D.N.Y. Local Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."); *id.* at 56.1(d) ("Each statement by the movant or opponent . . . controverting any statement of material fact[] must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").

Giallanzo does not dispute or otherwise address the assertions contained in paragraphs 36–60 of the City's Rule 56.1 statement. "[W]hile a court 'is not required to consider what the parties fail to point out' in their Local Rule 56.1 statements, it may in its discretion opt to 'conduct an assiduous review of the record' even where one of the parties has failed to file such a statement." *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) (citing *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000)). Here, the Court exercises such discretion where the record supplies a clear factual basis to dispute undisputed or unaddressed facts in the City's Rule 56.1 Statement.

broke surfaces, built foundations, and performed general labor. *Id.* ¶ 2. It is undisputed that the

HR position is covered by FLSA. Def. 56.1 ¶ 1. Pay and benefits in this role are determined by

a periodically renewed consent decree between the HRs' union and the City. *See* Pl. 56.1 ¶ 3;

Def. 56.1 ¶ 2. Under it, HRs who perform overtime can elect to receive either pay for those

hours or time off, known as "compensatory time." Pl. 56.1 ¶ 4.

On April 4, 1993, DOT promoted Giallanzo to Supervisor Highway Repairer ("SHR").

Pl. 56.1 ¶ 6. As an SHR, Giallanzo inspected the laying and grading of paving materials, and

oversaw the maintenance and repair of roads, sidewalks, fences, guide rails, and related

structures. *Id.* ¶ 7. Like the HR role, the SHR role is covered by FLSA, paid at a rate

determined by a consent decree, and eligible for compensatory time in either pay or time off. *Id.*

¶ 8; Def. 56.1 ¶¶ 3, 4; *see* Barker Decl. 1, Ex. E & Ex. F. Giallanzo served as an SHR until

September 23, 2005, when he was promoted to Area Supervisor of Highway Maintenance, Level

I ("AS-I"). Def. 56.1 ¶ 5; Giallanzo Dep. at 8:3-6, Ex. E & Ex. F; *see also* Pl. Resp. Obj. at 2

n.2.[3] Like HRs and SHRs, ASs are subject to two union-bargained agreements, the Blue-Collar

Collective Bargaining Agreement ("CBA") and the Citywide Agreement ("CA"). Pl. 56.1 ¶ 11.

The CBA determines the salary, *see* Def. 56.1 ¶¶ 9, 10; Barker Decl. 1, Ex. J at 4, 5, 8, and the

CA establishes overtime rates and methods of compensation, *see* Def. 56.1 ¶¶ 7, 8, Barker Decl.

1, Ex. K at 1–13.[4]

---

[3] Before the Report issued, the parties squabbled over the date and year of Giallanzo's promotion
to AS-1. Giallanzo has since mooted this dispute, agreeing with the City's calculation that DOT
promoted him on September 23, 2005. The Court accordingly does not consider the Report's
finding of a genuine dispute over the date of this promotion. *See* Def. Obj. at 11–15.

[4] The parties dispute the amount of compensatory time that Giallanzo earned during his tenure as
an AS-I. *Compare* Pl. 56.1 ¶ 12, *with* Def. 56.1 Resp. ¶ 12. The Court addresses this issue *infra*.

### 2.   Giallanzo's Responsibilities as an AS-I and AS-II

In 2007, Giallanzo and other AS-Is filed a grievance with the City alleging that they were doing the supervisory work of Area Supervisors of Highway Maintenance, Level II ("AS-II"). Def. 56.1 ¶ 14.  The group prevailed in arbitration.  This resulted in their retroactive promotion to AS-IIs as of March 5, 2007, with backpay.  *Id.*; *see* Barker Decl. 1, Ex. M. & Ex. N.

ASs work "under general supervision, with some latitude for independent judgement and initiative, oversee[] the maintenance and repair activities for a designated area, deal[] with roadways, highways, bridges, tunnels and related structures; or assume[] responsibility for an important segment of a borough or citywide program of such maintenance and repair."  Barker Decl. 1, Ex. M. at 2.  Typical tasks of ASs include scheduling work projects, assigning proper vehicles and equipment, assigning crews to work locations, accompanying crew supervisors to give instruction regarding repairs, recommending patching, resurfacing, and other maintenance, enforcing agency regulations, and inspecting completed work and work in progress.  Def. 56.1 Decl. ¶ 15; Barker Decl. 1, Ex. M. at 4.  Although the tasks of AS-Is and AS-IIs are generally the same, the roles differ as to the degree of supervision by senior DOT officials.  AS-Is operate under "general supervision, with some latitude for independent judgment and initiative" while AS-IIs work under "under general direction, with some latitude for independent action and decision."  Barker Decl. 1, Ex. M. at 7.

As an AS, Giallanzo assigned crews, performed quality control and safety checks, and inspected and supervised dozens of crews.  Def. 56.1 ¶ 12; Giallanzo Dep. at 11:22–12:5; *see* Giallanzo Decl. 1 ¶ 12.  Additionally, per the arbitration grievance, Giallanzo ran borough-wide programs, reported to the Deputy Director of Arterials (with minimal in-person contact), decided which crews attended to which projects, decided upon action in emergency situations, interacted with other governmental agencies, and prioritized various work projects.  *See* Def. 56.1 Decl.

¶ 17; Barker Decl. 1, Ex. M. at 5–6.  Giallanzo also supervised the maintenance of arterial highways, including assigning crews, investigating complaints, and answering complaints.  Def. 56.1 Decl. ¶ 19; Giallanzo Dep. 20:10-21.

Giallanzo also had human-resources responsibilities.  He approved timesheets, monitored the work of his subordinates, approved vacation requests, determined whether a subordinate's absence was excused or unexcused, completed informal and formal performance evaluations, and made recommendations on terminations, promotions, and transfers.  *See* Def. 56.1 Decl. ¶¶ 20–30; Giallanzo Dep. at 20:10-21; Barker Decl. 1, Ex. O ¶¶ 7–13; Giallanzo Decl. 1 ¶ 13. With respect to discipline, Giallanzo issued written discipline to HRs and SHRs under his supervision on a broad range of conduct, including improprieties relating to work product, timekeeping practices, behavior, and use of DOT property.  Def. 56.1 ¶ 25.  The City describes his role in initiating the disciplinary process as critical to its ability to sustain more serious charges against DOT highway repair workers—up to, and including, termination—in formal disciplinary proceedings.  *Id.* ¶ 26; *see* Barker Decl. 1, Ex. O ¶ 11.  Giallanzo, for his part, represents that he was not "authorized to dismiss, demote, or otherwise discipline employees," Giallanzo Decl. 1 ¶ 13, or to set his workers' wages or benefits, make unilateral hiring decisions, plan or control a budget, or determine the types of materials to be bought or stocked.  Def. 56.1 ¶ 27; Giallanzo Decl. 1 ¶¶ 14–18.

### 3.    Wage and Leave Practices for the Positions of AS-I and AS-II

Like HRs and SHRs, ASs are compensated and receive overtime in accordance with the CBA and the CA.  *See* Barker Decl. 1, Ex. J & Ex. K.  The New York Civil Service Law governs when and how covered employees can use their leave time.  Def. 56.1 ¶ 33.

As relevant to the dispute about whether an AS position fell within FLSA's executive exemption, the parties disagree on whether Giallanzo, while an AS, was paid on a salary basis, as

the City contends, or on an hourly basis, as Giallanzo contends. *Id.* ¶ 31; Giallanzo Decl. 1 ¶ 22. According to the City, Giallanzo was paid a consistent, bi-weekly salary. Def. 56.1 ¶ 31; *see* Barker Decl. 1, Ex. P. ¶ 16. And, it notes that, as the parties agree, he was never paid less than that regular salary. Def. 56.1 ¶ 32. Giallanzo, however, contends that he was paid an hourly wage, noting that his wage rate was described as $54.92, and that features of his employment (such as leave balances) were expressed to him in hours. Giallanzo Decl. 1 ¶ 22–24.

### 4.    Giallanzo's Retirement and Disability Program

On January 13, 2020, Giallanzo retired. Giallanzo Dep. at 42. He did so through a tax-free disability retirement program for which he was eligible as a result of his work clearing rubble at the site of the World Trade Center following the attacks of September 11, 2011. Def. 56.1 ¶¶ 40–43; Giallanzo Dep. at 10–11, 34–35. The following day, he began collecting a pension and Social Security Disability Insurance checks. Def. 56.1 ¶ 43.

As of his retirement from DOT, Giallanzo had accumulated significant unused leave and compensatory time. Def. 56.1 ¶ 44. Under City policy, employees who hold non-managerial, non-uniformed civil servant titles, may receive lump-sum payments for the compensatory time they accrued in FLSA-covered positions, as provided in 29 C.F.R. § 553.27(b). *Id.* ¶ 47. But as to time accrued in other positions, employees do not have this option. Instead, to use this time, they have only the option of entering into "V-Status" for a maximum of one year before retirement. *Id.* "V-Status" allows a nearly retired employee to remain on the City's payroll as a full-time employee and collect a regular salary for up to one year without reporting to work, while drawing down their accrued leave and/or compensatory time. *Id.* ¶ 48.

Several weeks before his last day of employment, Giallanzo inquired about compensation for his unused leave. *Id.* ¶ 46; Giallanzo Dep. at 42–48; Barker Decl. 1, Ex. X. According to Giallanzo, the City permitted him to take up to only 1.5 months of V-Status before retirement,

*see* Giallanzo Dep. at 47, while the City claims it offered him the full year permitted, *see* Def.

56.1 ¶¶ 49–54; Barker Decl. 1, Ex. X, so long as he did not begin his disability retirement before

or while in "V-Status." Giallanzo did not elect to take V-Status for any period before retiring.

### 5.   The City's Treatment of—and the Parties' Dispute Over—Giallanzo's Compensatory Time

When Giallanzo retired, he sought reimbursement for unused compensatory time (as well

as for other types of leave not at issue here). *See* Giallanzo Decl. 1 ¶ 26; Giallanzo Dep. 42–43.

He requested payment for 837 hours and 50 minutes at $54.92 per hour, his payrate at the time,

for a total of $46,011.98. Giallanzo Decl. 1 ¶¶ 26–27. He arrived at that total number of hours

by adding two categories of hours listed on his final paystub: (1) 778 hours and 20 minutes listed

under "COMP TIME"; and (2) 59 hours and 30 minutes listed under "CT (FLSA)." *See*

Giallanzo Decl. 1, Ex. D. Giallanzo later, in connection with this litigation, reconstructed what

he believed were the positions in which he accrued this compensatory time: (1) as an HR, 591

hours and 54 minutes, *see* Giallanzo Decl. 1, Ex. B; (2) as an SHR, 235 hours and 30 minutes,

*see* Giallanzo Decl. 1, Ex. D; and (3) as an AS, 10 hours and 24 minutes, *see* Giallanzo Decl. 1,

Ex. C.

The City initially refused Giallanzo's request for buyout in its entirety. Rookwood-

Brown Dep. at 45–49. It took the position that, because Giallanzo had opted for disability

retirement, he had foregone the right to a buyout of any compensatory time. *See id.*

The City later changed position. It determined that Giallanzo was eligible for a buyout,

but only as to the 59 hours and 30 minutes listed under "CT (FLSA)." Def. Resp. 56.1 ¶ 13.

Those hours represent the overtime hours worked by Giallanzo as an HR and SHR for which he

has not been compensated. Def. Resp. 56.1 ¶ 9; *see* 29 C.F.R. § 553.22 ("Compensatory time off

is paid time off the job which is earned and accrued by an employee in lieu of immediate cash

payment for employment in excess of the statutory hours for which overtime compensation is required by section 7 of the FLSA."). These hours, the City explained, necessarily were ones worked in excess of 40 hours per week in the week in question. Goldberg Decl. ¶ 8. And, the City submits, Giallanzo retired with only 59 hours and 30 minutes in this category because during his tenure, he often chose to be paid in cash for overtime rather than receive compensatory time off. *See* Giallanzo Decl. 1, Exs. A, B, C, D & E. (1993 paystub depicts 53 hours of overtime paid in the amount of $908.35; 2001 paystub depicts 20 hours of overtime paid in the amount of $732.91). The City did not explain the hourly rate that it proposed to apply for the payout of 59 hours and 30 minutes.

Further, according to the City, the other category, "COMP TIME," under which were listed 778 hours and 20 minutes, did not capture overtime hours. Rather, this category reflects either (1) contractually provided compensatory time either earned by Giallanzo in the FLSA-exempt post of AS or (2) time worked under special circumstances provided in the CBA applicable to Giallanzo, such as when an employee earned overtime by working on a holiday (but still not working more than 40 hours in a given week). Goldberg Decl. ¶¶ 5–9. According to the City, these hours are not FLSA-covered as per 29 U.S.C. § 207(a) and 29 C.F.R. § 553.22, and thus are not eligible for immediate cash buyout at retirement. Giallanzo could have been paid for the "COMP TIME" hours had he elected V-Status, the City notes, but by foregoing that option, he forewent the contractual right to such compensation.

## B.     Procedural History

### 1.     Giallanzo's Claims and the Cross-Motions for Summary Judgment

On October 13, 2020, Giallanzo filed the Complaint, bringing FLSA claims. Dkt. 1. It alleged that Giallanzo was entitled upon his retirement—but had been denied by the City—to a payout for the 837 hours and 50 minutes of compensatory time he had accrued, which the

Complaint alleged represented overtime hours. *Id.* ¶¶ 8–11. The case was thereafter supervised by Magistrate Judge Fox. Dkt. 5. On January 22, 2021, the City answered, Dkt. 10, and on March 9, 2021, amended its answer, Dkt. 15, pleading defenses including that the Complaint did not state a claim and that, as to at least part of his DOT employment, Giallanzo held positions that made him exempt from FLSA. *See id.* ¶¶ 15, 19.

On September 24, 2021, the City moved for partial summary judgment, Dkt. 30, filing a supporting memorandum of law, Dkt. 31, a Rule 56.1 statement, Dkt. 32, and a declaration from counsel, Dkt. 33, with accompanying exhibits. It seeks summary judgment on Giallanzo's claims except as to 59 hours and 30 minutes of compensatory time, which it concedes Giallanzo accrued for overtime hours while in a FLSA-covered position (and therefore were eligible for lump sum payout upon retirement). Dkt. 31.

On October 4, 2021, Giallanzo cross-moved for summary judgment, Dkt. 35, filing a supporting memorandum of law, Dkt. 37,[5] his declaration with accompanying exhibits, Dkt. 36, and a Rule 56.1 statement, Dkt. 38. On November 22, 2021, the City filed a memorandum of law in opposition, Dkt. 46, along with a declaration from counsel and attached exhibits, Dkt. 47, the declaration of Gordon Goldberg, Dkt. 48, and a Rule 56.1 counterstatement, Dkt. 49. On November 24, 2021, Giallanzo filed a letter responding to allegations of discovery abuse raised in the City's memorandum of law, Dkt. 46, and attached supplemental declarations, Dkt. 50.

### 2.    The Report and Recommendation

On December 21, 2021, Judge Fox issued the Report. Dkt. 51. At the threshold, the Report resolved two evidentiary issues. *See id.* at 22–24. First, it held, Giallanzo's paystubs were properly considered on summary judgment, notwithstanding the City's claim that he had

---

[5] Giallanzo submitted an identical document at Dkt. 34.

not produced these in discovery. *Id.* at 22–23. Second, it held, the declaration the City had submitted by Gordon Goldberg, which largely explained the codes and abbreviations used on Giallanzo's pay records, including as to his compensatory time, was required to be excluded, primarily because Goldberg had failed to attest to personal knowledge of the facts contained therein. *Id.*

As to the cross-motions for summary judgment, the Report recommended that the City's partial motion be denied and that Giallanzo's motion as to liability be granted. The Report's primary basis for so finding was that the City had failed to establish that FLSA's executive exemption, 29 U.S.C. § 213(a)(1), applied to Giallanzo during his service as an AS, and indeed had failed to adduce sufficient evidence to permit such a finding. Specifically, the Report found material disputes of fact as to certain required elements of the exemption, and that the City had not adduced sufficient evidence as to one such element—that the employee either have had authority to hire or fire other employees or was a person whose suggestions as to others' hiring, firing, advancement, promotion, and change of status were given particular weight. Accordingly, the Report recommended that summary judgment as to liability be for Giallanzo, whom, it held, was entitled to be paid for all compensatory time earned in any capacity, including as an AS. Report at 24–29.

However, the Report found, disputes of fact prevented a tabulation of the amount of pay to which Giallanzo was entitled. Among other things, it found that the number of compensatory hours Giallanzo earned in each capacity was disputed, as were the hourly rate(s) of compensation applicable to each role. The Report thus recommended that summary judgment be denied as to damages. *Id.* at 29–33. The Report further recommended that Giallanzo be found eligible for liquidated damages, on the ground that the City had not adduced sufficient evidence of its good

12

faith, particularly given its concession that Giallanzo had been wrongly denied pay for the 59

hours and 30 minutes of overtime accrued as an HR and SHR. *Id.* at 33–34.

On January 25, 2022, the City timely filed objections. Dkt. 56. These largely challenge

Judge Fox's determination as to the executive exemption. The City contends that, contrary to

Judge Fox's bases for denying it summary judgment and for granting summary judgment to

Giallanzo on this point, it adduced uncontroverted evidence that Giallanzo had (1) been paid on a

salary basis per the relevant test set forth in federal regulations; (2) customarily and regularly

directed the work of two or more employees; and (3) made recommendations regarding hiring

that carried particular weight, thereby satisfying the relevant test. *Id.* at 2–11. The City also

argued that its evidence as to Giallanzo's pay records should have been credited, thereby

enabling the Court to resolve the amount of his unused FLSA-covered compensatory time (i.e.,

the time accrued in his pre-AS posts). *Id.* at 16–18. The City also objected to the

recommendation that liquidated damages be awarded. *Id.* at 18–23. As follows from these

arguments, the City objected to the Report's recommendation that summary judgment be entered

for Giallanzo. *Id.* at 25–27.

On January 28, 2022, Giallanzo filed a response to the City's objections, defending the

Report's recommendations. Dkt. 57.

## II.    Applicable Legal Principles

### A.    Review of a Report and Recommendation

In reviewing a report and recommendation, a district court "may accept, reject, or

modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28

U.S.C. § 636(b)(1)(C). When specific objections are made, "[t]he district judge must determine

*de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed.

R. Civ. P. 72(b)(3); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). To accept

those portions of the report to which no timely objection has been made, "a district court need only satisfy itself that there is no clear error on the face of the record." *King v. Greiner*, No. 02 Civ. 5810 (DLC), 2009 WL 2001439, at *4 (S.D.N.Y. July 8, 2009) (quoting *Wilds v. United Parcel Serv., Inc.*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003)).

To the extent that the objecting party makes only conclusory or general objections, or simply reiterates the original arguments, the court will review the report and recommendation strictly for clear error. *See Dickerson v. Conway*, No. 08 Civ. 8024 (PAE), 2013 WL 3199094, at *1 (S.D.N.Y. June 25, 2013); *Kozlowski v. Hulihan*, No. 09 Civ. 7583 (RJH) (GWG), 2012 WL 383667, at *3 (S.D.N.Y. Feb. 7, 2012); *Kirk v. Burge*, 646 F. Supp. 2d 534, 538 (S.D.N.Y. 2009) (collecting cases). Further, "[c]ourts generally do not consider new evidence raised in objections to a magistrate judge's report and recommendation." *Tavares v. City of New York*, No. 08 Civ. 3782 (PAE), 2011 WL 5877548, at *2 (S.D.N.Y. Nov. 23, 2011).

### B.     Applicable Legal Standards for a Motion for Summary Judgment

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of demonstrating the absence of a question of material fact. In making this determination, the Court must view all facts "in the light most favorable" to the non-moving party. *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation

14

marks and citation omitted). Rather, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).

"Only disputes over facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there are genuine issues of material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (internal quotation marks omitted) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

## III.   Discussion

The Court has carefully considered the Report, the City's objections, and Giallanzo's responses. The Court first addresses the applicability of the FLSA executive exemption to Giallanzo's work as an AS, and then turns to the issues relating to the pay records.

### A.   Application of the Executive Exemption to Post-2005 Employment

FLSA was enacted "to ensure that employees receive a fair day's pay for a fair day's work," *Gibbs v. City of New York*, 87 F. Supp. 3d 482, 490 (S.D.N.Y. 2015) (quoting *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 578 (1942)), and to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and [the] general well-being of workers," *Havey v. Homebound Mortg., Inc.*, 547 F.3d 158, 160 (2d Cir. 2008) (quoting 29 U.S.C. § 202(a)). Subject to certain exceptions, FLSA requires that employees who work more than 40 hours per week be compensated for overtime work at a rate of one-and-one-half times their regular rate of pay. 29 U.S.C. § 207(a)(1).

Here, the City argues that the undisputed material facts establish that Giallanzo's work as an AS fits within the exemption from mandatory overtime requirements for employees who, *inter alia*, work in a "bona fide executive, administrative, or professional capacity." *See* 29 U.S.C. § 213(a)(1) (the "executive exemption"). The City bears the burden of proving that such exemption applies. *See, e.g., Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558 (2d Cir. 2012); *Jeong Woo Kim v. 511 E. 5th St., LLC*, 133 F. Supp. 3d 654, 660 (S.D.N.Y. 2015). At one time, FLSA's exemptions were narrowly construed in recognition of the law's remedial status, *see Reiseck v. Universal Commc'ns of Miami, Inc.*, 591 F.3d 101, 104 (2d Cir. 2010), but the Second Circuit has since held that "'exemptions are as much a part of the FLSA's purpose as the overtime-pay requirement,' and courts therefore 'have no license to give the exemption anything but a fair reading,'" *Vasto v. Credico (USA) LLC*, 767 F. App'x 54, 56 (2d Cir. 2019) (quoting *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018)).

Whether the exemption applies to Giallanzo presents a mixed question of law and fact. *Ramos*, 687 F.3d at 558 (citation omitted). "The question of how the [employees] spent their working time . . . is a question of fact. The question whether their particular activities excluded them from the overtime benefits of the FLSA is question of law." *Id.* (citing *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986)).

As to the executive exemption, FLSA does not define the term "bona fide executive." It instead directs the Secretary of Labor to do so by regulation. *See* 29 U.S.C. § 213(a)(1). The Department of Labor ("DOL") has defined an "employee employed in a bona fide executive capacity" as an employee:

> (1) Compensated on a salary basis . . . at a rate of not less than $684 per week . . . ;
>
> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;

(3) Who customarily and regularly directs the work of two or more other employees; and

(4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

*Id.* § 541.100(a).

Under these regulations, an employee's exempt or nonexempt status does not turn on his or her job title. Instead, the regulation focuses on whether the employee was paid on a salary (as opposed to an hourly) basis and whether the employee's duties met certain standards. 29 C.F.R. § 541.2; *see Yeh v. Han Dynasty, Inc.*, No. 18 Civ. 6018 (PAE), 2020 WL 883501, at *5 (S.D.N.Y. Feb. 24, 2020); *see also Reich v. Waldbaum, Inc.*, 52 F.3d 35, 39 (2d Cir. 1995); *Martinez v. Hilton Hotels Corp.*, 930 F. Supp. 2d 508, 520 (S.D.N.Y. 2013). "Summary judgment is appropriate on an executive exemption claim when all four . . . requirements are satisfied." *Jibowu v. Target Corp.*, 492 F. Supp. 3d 87, 98 (E.D.N.Y. 2020).

Here, the Report opined that the City had adduced evidence sufficient to establish only the second requirement—that Giallanzo's primary duty was "management." *See* Report at 24–29. The City argues that its evidence not only is sufficient, but also is dispositive, as to all four components.

### 1.    Was Giallanzo Compensated on a Salary Basis?

The Report concluded that the City had failed to establish that, during his employment as an AS, Giallanzo had been compensated on a salary basis, finding lacking the proof that he had been paid a consistent bi-weekly salary. *Id.* at 24–25. Objecting to this characterization of the record, the City points to several sources of evidence establishing how Giallanzo was paid. Def. Obj. at 3–4. The City is correct.

The salary requirement under FLSA is $684 per week. 29 C.F.R. § 541.100. Once this numeric requirement is met, "the overarching inquiry is whether the employer's practices reflect an 'objective intention to pay its employees on a salaried basis.'" *Martinez*, 930 F. Supp. 2d at 521 (citing *Yourman v. Giuliani*, 229 F.3d 124, 130 (2d Cir. 2000) (citation and quotation marks omitted)). An employee is deemed to be paid on a salaried basis "if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602(a). The prohibition against deductions from pay below the predetermined amount is subject to several exceptions, so as to permit deductions when an employee is absent due to discipline, sickness, or disability. *Id.* § 541.602(b)(1)–(7). In addition, courts have determined that isolated deductions—even if improper under § 541.602—do not necessarily mean that an employee is not paid on a "salary-basis." Instead, an employee's exempt status is lost only "if there is either an actual practice of making [improper] deductions or an employment policy that creates a 'significant likelihood' of such deductions.'" *Martinez*, 930 F. Supp. 2d at 521 (quoting *Anani v. CVS RX Servs., Inc.*, 788 F. Supp. 2d 55, 64 (E.D.N.Y.2011) (internal citation omitted)).

Measured against this framework, Giallanzo's employment as an AS satisfied the "salary basis" component of the exemption as a matter of law.

First, there is no genuine dispute that Giallanzo's compensation was set by collective bargaining agreements applicable to ASs. Collective bargaining agreements applied during the entire duration of his employment, as Giallanzo admits. *See* Pl. 56.1 ¶ 11 ("Area Supervisors are covered by collective bargaining agreements known as the 'Blue Collar Agreement' and the

'Citywide Agreement.'"). Judge Fox noted that the City, unhelpfully, had submitted only one of the CBAs in effect during Giallanzo's 15-year tenure (2005–2020) as an AS. *See* Report at 25. But that is of no moment, as the parties agree that the various agreements "have remained substantially similar throughout plaintiff's time as an Area Supervisor." Def. Obj. at 4 n.3; Pl. Resp. Obj. at 5.  On these facts a reasonable jury would not have any basis to not treat the CBA submitted to the Court, Barker Decl. 1, Ex. J, which covers the 2008–2010 period, as exemplary as to Giallanzo's entire tenure.

Second, there is no genuine dispute that Giallanzo's compensation, per these CBAs, exceeded the $684 weekly requirement.  That figure equates to an annualized gross salary of $35,568.  The CBA submitted on summary judgment lists the starting salary for an incumbent AS-I as $63,527, and the starting salary for an AS-II as $70,531.  Barker Decl. 1, Ex. J at 8.  In light of other evidence putting Giallanzo's minimum salary at or above these CBA figures, *see* Barker Decl. 1, Exs. H, K, L, M & N, and in the absence of any evidence adduced by Giallanzo that he was ever paid less than $684 per week, *see, e.g.*, Pl. 56.1; Giallanzo Decl. 1; Giallanzo Decl. 2, a reasonable jury could find only that Giallanzo's compensation exceeded the threshold set by 29 C.F.R. § 541.100 for his entire duration as an AS.

Giallanzo responds by noting the possibility that he could have been hourly docked for missed time.  This, he claims, could lead a juror to find that he was paid on an hourly, rather than a salary, basis as an AS.  Pl. Resp. Obj. at 3–6.  But he has not adduced evidence to give rise to a genuine dispute of material fact on that point.  Although there was testimony that Giallanzo's pay in theory could have been subjected to certain hourly deductions, *see* Rookwood-Brown Decl. at 29–31, it is undisputed that he never actually experienced any such deductions, let alone a deduction of a character inconsistent with the exemption under Section 541.602, *see* Def. Resp.

56.1 ¶ 37. Giallanzo has likewise not adduced any evidence that the City had an "actual

practice" of making improper deductions, or a policy creating a "significant likelihood" that

improper deductions would be made. *See Auer v. Robbins*, 519 U.S. 452, 461 (1997).

Giallanzo separately argues that he was paid on an hourly basis based on the fact that his

pay statements and bargaining agreements at points described his pay in hourly terms, including

in their tally of his compensatory time under union agreements. *See* Pl. Resp. Obj. at 4. But

"courts generally have rejected the proposition that an employer's reference to hourly rates in

payroll statements affects an employee's status as a salaried employee." *Martinez*, 930 F. Supp.

2d at 523. Quite the contrary, "[a] payroll accounting system which calculates an exempt

employee['s] pay on an hourly basis does not indicate that the employee was not salaried."

*Wright v. Aargo Sec. Servs., Inc.*, No. 99 Civ. 9115 (CSH), 2001 WL 91705, at *7 (S.D.N.Y.

Feb. 2, 2001) (internal quotation marks omitted); *see also Levine v. Unity Health Sys.*, 847 F.

Supp. 2d 507, 509–10 (W.D.N.Y. 2012) (finding plaintiffs salaried employees notwithstanding

employer's referencing their "hourly rate" in various communications and administrative

documents).

In sum, there are no material disputes of fact on this issue. The City has met its burden

on summary judgment to establish, as a matter of law, that Giallanzo was compensated on a

salary basis.

### 2.    Did Giallanzo's Duties Satisfy the Exemption's Requirements?

The parties dispute whether the nature and scope of Giallanzo's AS duties established the

"duties" component of the inquiry, which embraces the second, third, and fourth factors of the

DOL's test. 29 C.F.R. § 541.100(a)(2)–(4). "Consideration of these factors is a highly fact-

intensive inquiry, to be made on a case-by-case basis in light of the totality of the

circumstances." *Martinez*, 930 F. Supp. 2d at 523 (quoting *Clougher v. Home Depot U.S.A., Inc.*, 696 F. Supp. 2d 285, 290 (E.D.N.Y. 2010)).

The Report found that the City had established only the first of the three "duty" factors— that management was Giallanzo's primary duty.  Report at 25–26; *see id.* at 27–29.  The City objects to Judge Fox's assessment of the remaining factors.  *See* Def. Obj. at 7–11.  The Court reviews each of the factors in turn.

**a)**        **Was Management Giallanzo's "Primary Duty"?**

An employee's "primary duty" is the "principal, main, major or most important duty that the employee performs."  29 C.F.R. § 541.700(a).  It must be assessed based on all of the facts "with the major emphasis on the character of the employee's job as a whole."  *Id.*  Relevant factors

> include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

*Id.*

DOL has set forth a non-exhaustive list of activities that constitute "management."  Such activities include:

> interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

21

*Id.* § 541.102; *see also Karropoulos v. Soup du Jour, Ltd.*, 128 F. Supp. 3d 518, 530–33

(E.D.N.Y. 2015); *Trimmer v. Barnes & Noble, Inc.*, 31 F. Supp. 3d 618, 625 (S.D.N.Y. 2014);

*Martinez*, 930 F. Supp. 2d at 524–25.

   In finding for the City as to this factor, the Report noted that "the managerial character of

[Giallanzo's] area supervisor job title, the importance of his management duties and the level of

independent decision making establish that the plaintiff's primary duty was management."

Report at 26.  It cited undisputed evidence that "[w]hile serving in the title Area Supervisor

Level I, [Giallanzo] assigned crews, performed quality control and safety checks, and inspected

and supervised dozens of crews." *Id.* at 25–26.  And, it noted, as an AS-II, Giallanzo "had wide

latitude for independent action and decision and supervised crews borough-wide, over multiple

boroughs, and sometimes citywide.  [He] was running borough-wide programs, reported to the

deputy director of arterials, with whom he met rarely, decided what crews went out, which action

to take in emergencies, and generally [performed] the management of arterial highway

maintenance." *Id.* at 26.

   Giallanzo does not object to this conclusion or point to contrary evidence.  Pl. Resp. Obj.

at 7 ("Plaintiff disagrees with this finding, but will not challenge it here.").  The Court thus

reviews this finding for clear error.  The Court finds none.  The Report was clearly correct that

Giallanzo's primary duty as an AS was management, for the reasons it stated.  This element of

the test must thus be resolved in the City's favor.

### b) Did Giallanzo Customarily and Regularly Direct the Work of Two or More Other Employees?

   To satisfy the next element, the City must establish that Giallanzo "customarily and

regularly direct[ed] the work of two or more other employees." 29 C.F.R. § 541.100(a)(3).  "The

phrase 'customarily and regularly' means a frequency that must be greater than occasional but

which, of course, may be less than constant. Tasks or work performed 'customarily and regularly' includes work normally and recurrently performed every workweek; it does not include isolated or one-time tasks." *Id.* § 541.701.

Although Giallanzo undisputedly held a management post, the Report found that the City had failed to provide "any evidence in support of the frequency with which [Giallanzo] directed the work of more than two employees." Report at 27. It thus found that a reasonable jury could not find that Giallanzo customarily and regularly directed the work of more than two employees, and that the City therefore failed to meet its burden as to this requirement. *See id.*

In this aspect of its analysis, the Report was simply wrong. As the City's objections rightly note, the undisputed facts demonstrate the contrary: that Giallanzo often supervised two or more employees. His undisputed daily duties, on their face, entailed managing more than two employees. Giallanzo was responsible, for example, for assigning, inspecting, and supervising crews, *see* Def. 56.1 ¶¶ 12, 19; Giallanzo Dep. at 11–12, 20; Giallanzo Decl. 1 ¶ 12, a duty which necessarily entailed directing several employees to take specific actions. Similarly, Giallanzo's human-resources duties required supervision of two or more employees at least weekly, if not daily, 29 C.F.R. § 541.701, in that he approved timesheets, monitored the work of subordinates, approved vacation requests, and determined whether a subordinate's absence was excused or not. *See* Def. 56.1 Decl. ¶¶ 20–30; Giallanzo Dep. at 20 & Ex. O ¶¶ 7–13; Giallanzo Decl. 1 ¶ 13. Giallanzo has not adduced any evidence otherwise. A reasonable jury, on the evidence at summary judgment, would thus have to resolve this element, too, in the City's favor.

### c)   Did Giallanzo Have Hiring and Firing Authority?

The final element of the "duties" test inquires whether either the employee "ha[d] the authority to hire or fire other employees" *or* his "suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are

23

given particular weight." 29 C.F.R. § 541.100(a)(4); *see also, e.g., Tamayo v. DHR Rest. Co., LLC*, No. 14 Civ. 9633 (GBD), 2017 WL 532460, at *11–12 (S.D.N.Y. Feb. 3, 2017); *Karropoulos*, 128 F. Supp. 3d at 534–35. Under DOL's regulations, factors relevant to this inquiry include "whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon." 29 CFR § 541.105. The regulations state that, "[a]n employee's suggestions and recommendations may still be deemed to have 'particular weight' even if a higher-level manager's recommendation has more importance and even if the employee does not have authority to make the ultimate decision as to the employee's change in status." *Id.*

The Report again found against the City on this element. As it correctly noted, there was no evidence that Giallanzo himself had hiring or firing authority. The analysis thus turned on whether his suggestions as to such employment decisions carried particular weight. The Report opined that, although Giallanzo indisputably made recommendations to his superiors on subordinates' performance and played some role in initiating and documenting disciplinary issues, the City had failed to establish that these recommendations were "given particular weight," as per the regulation. Report at 27–28. Overall, the Report found the evidence on this question thin on both sides. Giallanzo, the Report noted, had averred that "he does not believe his 'recommendations went anywhere,'" but he had failed to "explain[] the basis for his belief." Report at 28 (quoting Giallanzo Decl. 2. at 3). As for the City, it had stated in its memorandum of law "that [Giallanzo] 'consistently made recommendations, which were afforded considerable weight,'" but in so claiming, the Report found, it had failed to cite to any evidence. Report at 28. Objecting, the City argues that there is enough evidence, primarily on Giallanzo's role in

initiating the disciplinary process, on which a jury could resolve this element in its favor.  Def. Obj. at 10–11.

This element presents a close question.  Neither side amassed substantial evidence as to it.  Unlike the preceding elements, the City's evidence is certainly not so conclusive as to enable it to prevail as a matter of law on this element.  But, on balance, the Court's judgment is that the evidence the City has adduced, and the inferences fairly drawn from it, are sufficient to reach a jury.  In particular, the City casts as crucial Giallanzo's role in initiating the disciplinary process, as attested to by Michael Diverniero, DOT's acting Deputy Commissioner at DOT, who termed this role "critical in [the agency's] being able to sustain more serious charges against DOT highway repair workers—up to and including termination—in formal disciplinary hearings." Diverniero Decl. ¶ 12.  Further, Giallanzo admits to having enjoyed "wide latitude for independent action," "play[ing] a crucial role in monitoring his workers' compliance with DOT policies," "initiating disciplinary proceedings when necessary," "regularly issu[ing] discipline when appropriate," and ultimately giving HRs and SHRs annual performance evaluations with "the authority to recommend whether a worker's employment should be retained or whether [they] should be terminated." Def. 56.1 ¶¶ 22–26 (undisputed).  Based on Giallanzo's required involvement in evaluating and documenting the performance of his employees, the City avers that his recommendations *were* given particular weight; if they were not, the City notes, it was tasking him with responsibilities that expended his time at the City's *own* expense.

To be sure, a jury could credit Giallanzo's contrary perception that, as he experienced events, his recommendations as to employment decisions regarding subordinates were not given weight.  But this evidence, too, is far from conclusive.  *See Costello v. Home Depot USA, Inc.*, 928 F. Supp. 2d 473, 489–90 (D. Conn. 2013) (finding issue of material fact on this element

where the employer's evidence "demonstrating that [plaintiff's] recommendations actually had an impact on those receiving them" was thin and was countered by plaintiff's "testimony that his opinions were not accorded particular weight by his supervisors"); *Martinez*, 930 F. Supp. 2d at 527 (finding issue of material fact on this element where plaintiff "assert[s] that their input regarding the employees was not taken seriously," while employer testifies to the contrary, citing at least one occasion where plaintiff provided input on the hiring of an employee); *Jibowu*, 492 F. Supp. 3d at 112 (finding issue of material fact on this element where plaintiff "believed that her recommendations '[were not] always taken into consideration,'" while employer proffered that she was "involved in the process of interviewing and hiring new team members," and her recommendations were afforded weight).

The Court, accordingly, finds a material dispute of fact on the fourth element. Although the other three elements of the executive exemption are properly resolved in the City's favor, this element requires resolution by a finder of fact at trial.

## B.      Evidentiary Issues

The Court next addresses two evidentiary issues addressed by the Report, each of which potentially bears on the tabulation of Giallanzo's FLSA-covered overtime hours.

### 1.      Admissibility of the Goldberg Declaration

The Report recommended excluding the Goldberg Declaration. It found the declaration inadmissible because Goldberg stated that information and belief was the basis on which he was attesting to the meaning of payroll codes and terminology that appeared on Giallanzo's DOT pay records. Report at 23–24. These attestations centrally included the meanings of "COMP TIME" and "CT (FLSA)" on a paystub, and that these two categories describe non-overlapping sets of hours. *See* Goldberg Decl. ¶¶ 4–9.

The City first objects to this recommendation on the ground that the declaration, which the City submitted in reply to Giallanzo's opposition papers, was a "last-minute declaration." Def. Obj. at 14 n.13 ("Goldberg's declaration was based on information and belief due to the need to provide a last-minute declaration on defendant's opposition and reply."). This objection is unpersuasive. The City is accountable for meeting court deadlines. Judge Fox made this point firmly in denying the City's 11th-hour request for an extension of its deadline to reply. He noted that City counsel's "dilemma [was] one of her own creation," Dkt. 43, with counsel having long known the briefing schedule and having participated in proposing the operative filing deadlines, *see id.* ("Counsel to the defendant has known, since September 9, 2021, when the parties proposed the motion schedule which the Court adopted, that the defendant's submissions were due today, November 19, 2021.").

The Court, however, parts company from the Report in that the Court finds the Goldberg Declaration cognizable on summary judgment. In recommending that the declaration be excluded, the Report relied on Federal Rule of Civil Procedure 56(c)(4), which requires that affidavits or declarations used to support or oppose a motion "be made on personal knowledge, set out facts that would be admissible in evidence and show that the affiant or declarant is competent to testify on the matters stated." But the Report gave insufficient attention to the attestations in the Declaration that supported Goldberg's competence to speak to the matters in the Report. "An affiant's conclusions based on personal observations over time, however, may constitute personal knowledge, and an affiant may testify as to the contents of records . . . reviewed in . . . [a] official capacity. The test for admissibility is whether a reasonable trier of fact could believe the witness had personal knowledge." *Searles v. First Fortis Life Ins. Co.*, 98 F. Supp. 2d 456, 461 (S.D.N.Y. 2000) (internal footnotes omitted); *see*

*Owens-Corning Fiberglas Corp. v. U.S. Air*, 853 F. Supp. 656, 663 (E.D.N.Y. 1994) (admitting affidavit as proper even though affiant did not swear to personal knowledge, on the basis that her job and responsibilities made her personally aware of the facts attested); *Jordan v. United Cerebral Palsy of N.Y.C., Inc.*, No. 12 Civ. 5715 (DLI) (RLM), 2016 WL 9022502, at *4 (E.D.N.Y. Mar. 31, 2016), *aff'd*, 682 F. App'x 48 (2d Cir. 2017), *as amended* (Mar. 10, 2017) (admitting affidavit as proper where affiant did not swear to personal knowledge, on the basis that his role as "Acting Director" of program gave him "primary knowledge" to the information in his declaration).

Here, as Goldberg attested, he is DOT's director of labor relations, a position he has held since 1996. That position—and length of tenure—presumptively gives him broad familiarity with his agency's pay practices. And, Goldberg further attested, his statements about the meaning of codes in DOT records were based "on the books and records of the DOT." Goldberg Decl. at ¶ 1. Although Goldberg's declaration was far from a model of precision and care including in failing to explain granularly how he developed familiarity with his agency's pay records, Goldberg's senior position with DOT was enough of a basis on which, for purposes of summary judgment, to conclude that he had the familiarity with quotidian payroll records of his agency to explain what the codes thereon signified. A reasonable trier of fact, considering Goldberg's position and presumptive experience with his agency's pay records for salaried employees, could believe that Goldberg had enough working knowledge of them to explain what entries like "COMP TIME" and "CT (FLSA)" denoted.

The Court accordingly will not exclude the Goldberg declaration from the summary judgment calculus. Should this case reach trial and should the points in the Declaration remain controverted, however, the Court expects the City to propound a witness—whether Goldberg or

another official—who is prepared to demonstrate, with more precision, his or her basis for opining as to the meaning of the codes at issue.[6]

### 2.    Admissibility of Giallanzo's Paystubs

Giallanzo, on summary judgment, put forward several examples of his paystubs during his tenure, in order to chronicle his leave balances at various points as he was promoted to new roles. By showing increases in the various leave categories, Giallanzo has reconstructed how much compensatory time he believes he has accrued in each of his roles with DOT. Notably, by his account, the vast majority of those hours accrued before he was promoted to AS—and per the City, was no longer covered by FLSA.

The Report, rejecting the City's challenge to these paystubs, recommends admitting them, on the ground that the City failed to present evidence substantiating its claim that in discovery, Giallanzo had improperly denied it access to these records, which had been in his possession. Report at 22–23. The City does not object to this recommendation.

---

[6] The City separately argues that Goldberg's explanation of the codes used on the payroll records is corroborated by other evidence: to wit, by the deposition testimony of Andrea Rookwood-Brown, who served as Director of Payroll and Timekeeping Operations at DOT, and by documents, including a Human Resources Management System report, *see* Dkt. 33-20, and a Leave Balance report, *see* Dkt 33-22. It is correct that a declaration that otherwise might be set aside as "self-serving" can be fortified by other admissible evidence. *See, e.g., Fiano v. Premier Cap., LLC (In re Fiano)*, No, 15-21410 (AMN), 2019 Bankr. LEXIS 2962, at *11 (Ct. Bankr. Sept. 25, 2019); *Merrill Iron & Steel, Inc. v. Yonkers Contr. Co.*, No. 05 Civ. 5042 (WHP), 2006 U.S. Dist. LEXIS 66625, at *21 (S.D.N.Y. Sept. 19, 2006). But Rookwood-Brown's testimony gave limited support to Goldberg's declaration, in that she testified that her office does not play a role in payroll, *see* Rookwood-Brown Decl. at 18, and, to explain the difference between "COMP TIME" and "CT FLSA," she provided the conclusory reasoning that because the two categories are "individual itemized" on the form, the hours that the two capture cannot be overlapping, *id.* at 20–21. And the two documents above, which like the payroll records list these two categories, do not explain what each means and whether, as Giallanzo posits, the hours listed under "COMP TIME" include FLSA-covered overtime for persons holding FLSA-covered positions. Barker Dec., Exs. T & V.

The Court accordingly reviews the recommendation for clear error.  On this point, the

Court finds the Report's recommendation well-reasoned and not erroneous.  Indeed, the Report's

recommendation was clearly correct, in light of an email exchange that put defense counsel on

notice of the plaintiff's possession of these paystubs and of defense counsel's failure to request

their production.  *See* Barker Decl. 2, Ex. B.

**C.     Issues Relating to the Tabulation of Overtime Hours and Pay**

The Court, finally, addresses issues regarding the tabulation of the City's overtime

liability under FLSA.

**1.     The City's Liability Under FLSA for 59 Hours and 30 Minutes
Categorized Under "CT (FLSA)"**

The Report implicitly acknowledges the City's concession that it owes Giallanzo buyout

pay for 59 hours and 30 minutes of compensatory time—the time listed under "CT (FLSA)" on

his final pay records.  *See* Report at 34; *see generally* Def. Mem.; Def. Obj.  Presumably because

the City's liability as to those discrete hours is uncontroverted—all agree the 59 hours and 30

minutes are traceable to overtime that Giallanzo worked before he became an AS and for which

he was never compensated—Giallanzo, in his response to the defense's objections, did not

address this concession, although these hours are a subset of the much larger number of hours

(more than 837) that Giallanzo claims represents compensable overtime work for which he has

not been paid.  *See* Pl. Mem. at 23.

In light of the City's concession in Giallanzo's favor and the absence of dispute, the

Court accordingly grants Giallanzo partial summary judgment as to liability, limited to these

hours.  Specifically, the Court, with the Report, finds the City liable under FLSA insofar as it

finds 59 hours and 30 minutes of overtime hours accrued in FLSA-covered posts for which

Giallanzo has never been compensated, including upon his retirement.  For avoidance of doubt,

the Court's adoption of the Report to this effect does not resolve—in either direction— whether Giallanzo worked but was not paid for any other overtime hours while in a FLSA-covered position, whether Giallanzo was exempt from FLSA for his work as an AS, and whether any of the hours listed under "COMP TIME" in Giallanzo's final pay records represent overtime hours, and if so, the position(s) in which Giallanzo worked while accruing this hours.

2. **The Material Dispute of Fact as to the Hours Listed Under "COMP TIME" on Giallanzo's Pay Records**

Giallanzo seeks overtime pay under FLSA for the 778 hours and 20 minutes listed as "COMP TIME" on his final pay records. The Report found unresolvable on summary judgment, based on the absence of clear testimony explicating these records, whether some or all of these hours represent compensable but as-yet unpaid overtime hours, requiring resolution at trial. *See* Report at 29–33. The City, in moving for summary judgment in its favor and in objecting to Report, contends that there is no material dispute of fact as to what the hours listed under "COMP TIME" represent. These hours do not, the City represents, capture overtime times, but instead encompass hours earned by employees in other circumstances as provided by the DOT employees' collective-bargaining agreements. *See* Def. Opp. Mem. at 10–11; Goldberg Decl. ¶¶ 4–9; Def. Obj. at 14. Giallanzo counters by disputing factually that the "COMP TIME" notation covers special circumstances that do not include overtime hours. Contesting the City's characterization of that category, he attests, albeit generally, that he recalls working but not being paid for overtime hours during his tenure to an extent well outstripping the 59 hours and 30 minutes that the City contends were the full extent of its overtime liability under FLSA. On this basis, Giallanzo posits that the "COMP TIME" must encompass additional overtime hours.

The meaning of the "COMP TIME" category on Giallanzo's pay records is not an issue that can be reliably resolved on summary judgment. Only one witness, Goldberg, addressed this

point on the basis of a purported understanding of the City's payroll systems. Were Goldberg's testimony on this point treated as conclusive, the City would prevail. But although the Court—departing from the Report—has found Goldberg's declaration cognizable on summary judgment, its receipt in evidence does not require that it be credited as persuasive. A jury could credit Goldberg that the "COMP TIME" hours do not represent overtime hours, but it could also reject his threadbare testimony as conclusory and unexplained. And, although Giallanzo does not profess competence to decode the City's payroll records, were a jury to credit his testimony that he worked more overtime hours than the 59-plus hours listed as "CT (FLSA)," it could reject the records—however decoded—as inaccurate on that point.

In this circumstance, neither party is entitled to summary judgment on the issue whether the payroll records accurately tabulated Giallanzo's overtime hours. Viewing the evidence in the light most favorable to the nonmovant, each side's motion is blocked—the City's by the prospect that a finder of fact would not credit the underwhelming Goldberg Declaration and therefore that it could not carry its burden of proof, and Giallanzo's by the prospect that the declaration would be credited. It will be for the finder of fact at trial to make these assessments of credibility and persuasiveness. *See, e.g., Anderson*, 477 U.S. at 247 (court on summary judgement is not to "weigh the evidence and determine the truth of the matter"); *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 622 (2d Cir. 1999) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." (internal quotation marks omitted)); *see also Jeffreys v. City of New York*, 426 F.3d 549, 551 (2d Cir. 2005); *Parker v. Fantasia*, 425 F. Supp. 3d 171, 183 (S.D.N.Y. 2019) (citing *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 726 (2d Cir. 2010)).

Although reaching this result via different reasoning, the Court accordingly adopts the Report's recommendation that the meaning of the COMP TIME category on Giallanzo's pay records— and the extent, if any, to which that category encompasses overtime hours in FLSA-covered posts for which Giallanzo has not yet been paid—be resolved by the jury at trial.

### 3.   The Material Dispute of Fact as to the Hourly Rate (or Rates) at Which to Calculate Giallanzo's Compensable Overtime

Relatedly, the Report finds an issue of fact as to the applicable hourly rate (or rates) for any uncompensated overtime hours.  These include the 59 hours and 30 minutes as to which the City has conceded it owes Giallanzo in overtime pay for pre-AS work, and as to which the Court has entered partial summary judgment as to liability for Giallanzo.  Report at 29–33.  As the Report explains, neither party—tracking their failure to adduce convincing evidence decoding the "COMP TIME" notation on the City's pay records—adequately addressed this issue.  *See id.* at 29 (finding submissions inadequate as to hourly rates for AS overtime hours); 33 (same, as to HR and SHR overtime hours).

Neither party objects to this aspect of the Report.  The Court thus reviews the recommendation only for clear error.  The Court finds none:  The Report is clearly correct in finding the rate or rates applicable to Giallanzo's unpaid overtime hours to be indeterminate on the present record.  The Court adopts the recommendation that the hourly rate of compensation to be applied to Giallanzo's uncompensated 59 hours and 30 minutes of overtime pay, and to any other uncompensated overtime found at trial, be resolved at trial.

### 4.   Liquidated Damages

Where liability is found on a plaintiff's FLSA claim, defendants are accountable to pay, in addition to past-due wages, liquidated damages, unless the defense can show that the employer acted in subjective "good faith" with "objectively 'reasonable grounds' for believing his or her

acts did not violate the FLSA." *See* 29 U.S.C. § 216(b); *see also Ametepe v. Peak Time Parking, Corp.*, No. 18 Civ. 5384 (PAE), 2021 WL 1172669, at *9 (S.D.N.Y. Mar. 29, 2021) (citing *Garcia v. Saigon Mkt. LLC*, No. 15 Civ. 9433 (VSB), 2019 WL 4640260, at *11 (S.D.N.Y. Sept. 24, 2019)). Liquidated damages under FLSA reflect "compensation to the employee occasioned by the delay in receiving wages caused by the employer's violation of the FLSA." *Herman v. RSR Secs. Servs., Ltd.*, 172 F.3d 132, 141–42 (2d Cir. 1999).

The Report recommended an award of liquidated damages. Report at 33–34. It noted that the City had wrongly classified Giallanzo as FLSA-exempt during his years as an SA, and had admitted liability as to 59 hours and 30 minutes of overtime work as an HR and SHR. This, the Report found, "undermine[d]" the City's claim of good faith. *Id.* at 33. The City objects to this recommendation. It points to various evidence that (1) it made good faith attempts to comply with FLSA and related policies; (2) it counseled Giallanzo about his options upon retirement with respect to unused leave, including that he had an option to shift his employment to V-Status, which would have allowed him to monetize a year's worth of compensatory time without having to work; and (3) it had a reasonable basis to conclude that Giallanzo, while an AS, was FLSA-exempt. *See* Def. Obj. at 18–23. Giallanzo counters that this evidence does not meet the City's high burden to establish the affirmative defense of good faith. Pl. Resp. Obj. at 9–11.

On this point, the Court parts ways with the Report, viewing the issue of liquidated damages as properly reserved for trial. At summary judgment, courts are loathe to rule on a party's good-faith defense where a FLSA violation has yet to be established. *See, e.g., Murray v. City of New York*, No. 16 Civ. 8072 (PKC), 2020 WL 615053, at *16 (S.D.N.Y. Feb. 10, 2020) ("Plaintiffs' summary judgment motion is denied as to their claimed FLSA violations, and it is

therefore premature to reach the question of whether any hypothetical violation occurred in good faith and was grounded in the City's reasonable belief that it had complied with the law."); *Perry v. City of New York*, No. 13 Civ. 1015 (VSB), 2018 WL 1474401, at *8 (S.D.N.Y. Mar. 26, 2018) ("[A]t this stage, when there are disputed issues of fact with respect to liability, I find that there are likewise disputed issues of fact rendering any finding as to liquidated damages or willful infringement premature."); *Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 503 (S.D.N.Y. 2015) ("Courts in this Circuit have generally left the question of willfulness to the trier of fact." (cleaned up)). And here, the Court—unlike the Report—has not found entry of summary judgment warranted on the issue of whether the City wrongly denied Giallanzo overtime pay for his work as an AS. As a result, the only established violation of FLSA at this stage concerns 59 hours and 30 minutes of uncompensated overtime from Giallanzo's work long ago as an HR and SHR. With Giallanzo's central claim of overtime liability—based largely on the purported misclassification of hours on his paystubs as "COMP TIME" instead of "CT (FLSA)"—unresolved, it is sensible to defer assessing the City's good faith towards his overtime pay until the full scope of the City's FLSA liability is determined. This may, or may not, prove to extend beyond these 59 hours and 30 minutes. *See Murray*, 2020 WL 615053, at *16 ("Even if it were not premature, a trier of fact is best positioned to weigh the conflicting evidence as to the City's subjective good faith and objective reasonableness.").

To the extent that Giallanzo seeks summary judgment as to liquidated damages limited to the 59 hours and 30 minutes, the Court finds a material dispute of fact. A finder of fact could certainly resolve the good-faith defense as to those hours by focusing narrowly on the City's state of mind with respect to its distinct lapse as to those hours. Insofar as the record leaves murky the City's basis for initially denying Giallanzo's claim for a buyout as to those hours, a

finder of fact could find that the City failed to meet its burden to establish good faith. But a finder of fact could alternatively assess the City's good faith by taking a broader perspective, including by considering the legality and good faith of the City's overall treatment of Giallanzo and his compensation and buyout options at the point of his retirement. *See Reich v. S. New Eng. Telecomm. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997) (district court did not err in considering wide range of evidence in good faith inquiry under FLSA). Particularly if no other FLSA violations are found, a finder of fact, viewing the City's admitted error in context and in light of the evidence of good faith offered by the City, could find this error to have been made in good faith.

Accordingly, the Court, departing from the Report, denies the parties' cross-motions for summary judgment as to liquidated damages. To the extent Giallanzo prevails on his FLSA claims, he remains at liberty to pursue such relief at trial.

## CONCLUSION

For the reasons set out in the foregoing, the Court (1) denies the City's partial motion for summary judgment in its entirety; (2) grants in part Giallanzo's motion for summary judgment, but limited to the 59 hours and 30 minutes of unused compensatory time listed in his final pay records as "CT (FLSA)," which undisputedly represent uncompensated overtime hours accrued during Giallanzo's tenure as an HR and SHR; and (3) otherwise denies Giallanzo's motion for summary judgment.

This case will now proceed to trial on all outstanding issues. These include (1) whether Giallanzo was covered by the FLSA, or exempt under the executive exemption, during his tenure (2005–2020) as an AS; (2) the extent to which (beyond the 59 hours and 30 minutes) he was not paid for overtime work accrued as an HR or SHR and, if covered by FLSA, as an AS; (3) the rate or rates at which Giallanzo was entitled to be paid, at his retirement, for unpaid overtime hours;

and (4) whether the City is obliged to pay liquidated damages for the FLSA violation the Court has found or others that may be established at trial.

The Court directs the parties promptly to confer, and, within three weeks of this decision, to submit a joint pretrial order consistent with the Court's Individual Rules governing jury trials. Any motions *in limine* are due on the same date as the joint pretrial order; opposition briefs are due one week later.

The Clerk of Court is respectfully directed to terminate the motion pending at docket 30.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: September 22, 2022
New York, New York

37